## JOE WARE V. THE STATE.

### No. 3449. Decided February 28, 1906.

**1.—Murder in Second Degree—Continuance.**

Where in an application for continuance in a case where the defendant was charged with murder, it was shown that the absent witness was the defendant's wife; that there was due diligence and that by her testimony it was proposed to be shown that the deceased had told her that he would kill defendant, and that she told her husband a day or two before the homicide, the continuance should have been granted.

**2.—Same—Evidence—Impeaching Witness—Contradictory Statement.**

Upon a trial for murder it was error to permit the State to impeach its witness who had simply failed to testify to a fact for the State, but who had not deceived the State's attorney as to what his testimony would be; and who had notified him that his statement made before the grand jury to the effect that defendant had stated to witness he would have shot deceased again and killed him if his pistol had not snapped, was a mistake, and who testified on the trial that defendant had made no such statement.

**3.—Same—Evidence—Extraneous Offense—Remoteness of Time.**

Upon trial for murder it was error on cross-examination by the State, to require defendant to testify that about twenty years before this trial he was tried in the State of Mississippi before an examining court on a charge of murder.

**4.—Refused Charge—Provoking Difficulty.**

Upon trial for murder where the court charged upon provoking the difficulty, although not quite explicit enough, yet when considered with the entire charge the same was sufficient, there was no error in refusing a special charge upon this phase of the case.

**5.—Same—Charge of Court—Manslaughter—Adequate Cause.**

Upon a trial for murder where the testimony showed that the deceased had struck defendant, beat him over the head, etc., when appellant shot him with a pistol, the court should have instructed the jury if they believed deceased made an unlawful assault on defendant, etc., causing pain or bloodshed, that, in law was adequate cause, and if in view of such cause, or such cause in connection with all the antecedent facts and circumstances, the jury believed appellant's mind was excited and he was rendered incapable of cool reflection, and in such condition shot deceased, he would be guilty of no higher grade of offense than manslaughter; and it was error to charge the law simply in the abstract.

**6.—Same—Argument of Counsel.**

Upon a trial for murder it was improper for the State's counsel to call the defendant an assassin, in his argument to the jury.

Appeal from the District Court of Kaufman. Tried below before Hon. J. D. Dillard.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*N. B. Morris* and *Young & Adams,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment fixed at confinement in the penitentiary for a term of fifteen years.

The statement of facts shows that there was ill feeling between the parties antedating the homicide. About two weeks before the homicide, deceased shot the dog of appellant, and this intensified the feeling. A day or two before the killing, there was some trouble about a calf of appellant getting into the enclosure of deceased. Deceased made complaint to the wife of appellant in regard thereto, and in that connection made threats against appellant. It was also proven by the State that appellant used threats against deceased. On the day of the homicide about noon, deceased and appellant met at the postoffice in the little town of Tolosa: deceased being in the postoffice when appellant came. Several other parties were also present. The parties spoke to each other. Deceased was getting his mail, and appellant asked the postmaster while looking in the W's to see if he had anything. As soon as they were through with the mail matter, deceased asked appellant about his calf getting into his enclosure, and an altercation ensued between them in regard thereto. As the parties waxed warm, deceased reminded appellant that they were in the postoffice. Appellant thereupon told deceased he could come out of the postoffice, and started. Deceased followed him to the door, and the altercation continued. There was a buggy standing near the postoffice, and the parties got near to it as they were quarreling. Appellant, among other things, told deceased that it was a damn cowardly trick to kill his dog; and deceased told him his dog was sucking eggs. Appellant said it was a damn lie. At this juncture some of the witnesses say, that appellant struck deceased first with a newspaper, which he had in his hand; but a majority of the witnesses state that deceased struck the first blow, hitting appellant over the head: deceased being a larger and stronger man than appellant, in the fight which ensued, soon obtained the advantage, and, according to the testimony, was beating appellant over the head and had him stooped over. Appellant drew his pistol, and shot deceased in the bowels, inflicting a mortal wound from which he died in about thirty hours. This is a sufficient statement of the facts to discuss the assignments.

Appellant made a motion for continuance on account of the absence of his wife. It appears that diligence was used to procure her testimony, but she was sick at the time. This is appellant's second application for continuance. It occurs to us that the testimony of this witness was of a material character: it being proposed to prove by her that in connection with the deceased speaking to her about the calf's depredations on his property, that he said, he intended to kill the calf; and also kill the defendant. That she told her husband of this. This was a day or two before the homicide. The continuance should have been granted.

During the trial, after the State had rested its case in chief, and

after defendant had testified as a witness in his own behalf, the State called as a witness E. L. Dixon, and asked him if immediately after the shooting, and while en route from Tolosa to Kaufman, defendant made any statement to him in regard to the killing; and he answered that he did not. Whereupon the assistant county attorney asked said witness if he had not testified before the grand jury to the effect that defendant stated he would have shot deceased again, and would have killed him if his (defendant's) pistol had not snapped. And he answered that he did make such statement, but he was mistaken, and in thinking over the matter, immediately after leaving the grand jury he discovered his mistake, and sought a neighbor and desired to correct the same and was informed that he could do so at the trial. That before the trial he also informed counsel for the State that he was mistaken as to said matter. All of this procedure was objected to on the ground that the questions propounded were leading, and no necessity was shown for having the witness' memory refreshed by the proceeding before the grand jury; and that said statement of the defendant before the grand jury could not bind defendant, and could only be used by appellant for the purpose of impeaching the witness, and he being a State's witness he could not be impeached by the State by showing that he had made a statement before the one he had made in court, unless he had testified to something injurious to the State's interest. All of which objections were overruled by the court, and the witness compelled to testify as aforesaid. In connection with the witness' testimony, the statements made before the grand jury were permitted to go before the jury. In our opinion, the objections of the appellant should have been sustained. It is competent, where the witness may have deceived the party calling him, if he testified to some fact injurious to that side, to impeach such witness; but here it seems that the witness became cognizant of his mistake in his testimony before the grand jury almost immediately. He is shown to have notified other parties of his mistake, and wished to correct it; and the attorneys representing the State were also notified of his mistake, and that he would not testify as he had testified before the grand jury. Consequently in the attitude this witness occupied before the court he could not be impeached, by showing directly or indirectly that he had made a statement before the grand jury different from his testimony. He gave no testimony injurious to the State, but simply failed to testify to a fact for the State. We believe the testimony was calculated to injure appellant. It was a recitation of matters that showed both carelessness on the part of appellant as well as malice; and if witness had testified to it, it would have been important. The fact that it was shown to the jury that he made such statement before the grand jury was liable to impress the jury with the idea that perhaps the fact was true, and witness was equivocating. Jenkins v. State, 8 Texas Ct. Rep., 182; Bailey v. State, 37 Texas Crim. Rep., 579; Gill v. State, 36 Texas Crim. Rep., 589; Drake v. State, 29 Texas Crim. App., 276; Thomas v. State, 14 Texas Crim. App., 70; White v. State, 10 Texas

Crim. App., 381. The fact that this testimony could not be introduced before the jury to impeach the witness, the limitation of the court of its purpose to that effect, would not cure the error.

While appellant was on the stand, over objections of his counsel, and on cross-examination by the State, he was required to testify that about twenty years before this trial he was tried in the State of Mississippi, before an examining court on a charge of murder. This was improper, and not authorized by law; being too remote in point of time. Wesley v. State, 12 Texas Ct. Rep., 462; Bowers v. State, 6 Texas Ct. Rep., 428; Carroll v. State, 32 Texas Crim. Rep., 431; Greenleaf on Ev., sec. 459; Wharton's Cr. Ev., secs. 474, 476.

We have examined the court's charge on provoking the difficulty, and while we believe on another trial the court should be a little more explicit in applying the law to the facts, and tell the jury that they must believe that appellant not only used words and conduct calculated to provoke a difficulty, but that he must have intended to so provoke it, yet considering the entire charge of the court, we do not believe there was error which would require a reversal. Consequently the court was not called upon to give the requested charges numbers 1 and 2.

The charge of the court on manslaughter is criticised, because it is in the abstract, and the law is not applied to the facts. It occurs to us that this criticism is proper. As we take it, appellant's contention so far as manslaughter is concerned, was that an assault on him causing pain or bloodshed, was adequate cause; and in connection therewith, the jury could look to all the facts and circumstances in evidence tending to illustrate and intensify said cause. The jury are told in the definitions, that an assault and battery producing pain or bloodshed, is adequate cause but in applying the law to the facts, the court should have instructed the jury, if they believed deceased made an unlawful assault on appellant and struck him, causing pain or bloodshed, that in law was adequate cause, and if, in view of such cause, or such cause in connection with all the antecedent facts and circumstances, the jury believed appellant's mind was excited, and he was rendered incapable of cool reflection, and in such condition shot deceased, he would be guilty of no higher grade of offense than manslaughter.

We do not deem it necessary to discuss the assignments with reference to the argument of counsel for the State, further than to say that the county attorney should not have used the epithet of "assassin" against defendant in his argument, and the court should have promptly restrained him, and informed the jury not to regard said remark. Kugadt v. State, 38 Texas Crim. Rep., 681; Morris v. State, 39 Texas Crim. Rep., 371; Byrd v. State, 39 Texas Crim. Rep., 609.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*