### Bob Hext v. The State.

No. 9009.   Delivered April 15, 1925.

1.—Murder—Evidence—Expert Witness.

It was not error to permit the physician to testify as to the effect of strychnine poison, upon the ground that in qualifying he revealed no personal experience.  It was competent that he qualify as an expert upon knowledge obtained from the study of books upon the subject.  Following Rice v. State, 49 Tex. Crim. Rep. 669, English v. State, 85 Tex. Crim. Rep. 450, also see Underhill's Crim. Ev., 3rd Ed., Sec. 189.

2.—Same—Evidence—Impeaching Own Witness.

It was error to permit the state to examine the witness Pete Hext, with reference to his testimony before the grand jury.  If the witness had surprised the State's counsel by giving testimony injurious to the states case, it might have been competent to impeach him, by the reproduction of his testimony given before the grand jury.  See Art. 816, C. C. P., also cases collated in Vernon's Tex. Crim. Stats. Vol. 2, p. 763.

3.—Same—Evidence—Showing Motive—Admissible.

Where testimony was admitted showing that there was an insurance policy upon the life of deceased, and that he had an estate, appellant being his son, and under the statute an heir of the deceased, no error is shown, the testimony suggesting a probable motive for the homicide.  Following Johnson v. State, 48 Tex. Crim. Rep. 423.  Also see Underhill's Crim. Ev., 3rd Ed., Sec. 503.

4.—Same—Charge of Court—Requested Charge—Properly Refused.

Where the state introduced in evidence a declaration of appellant, without objection, made while under arrest, and not properly admissible, it was not error for the court to refuse to charge the jury that they must accept as true such declaration of appellant that he had not purchased the strychnine, such declaration being neither a confession, nor an admission, and not being relied upon to prove the guilt of appellant.  Distinguishing Slade v. State, 29 Tex. Crim. App. 381, and illustrated in Trevinia's case 48 Tex. Crim. Rep. 207.

5.—Same—Argument of Counsel—Appellant's Failure to Testify.

Where appellant did not testify in his own behalf, it was reversible error in this case for the county attorney to say in his argument "If the defendant had not bought the poison, he would have said so, and would have introduced witnesses to prove he did not buy the poison," two witnesses having testified for the state that he did buy the poison, there being no other witnesses who could have testified on the issue, save appellant, such remark was clearly a comment on appellant's failure to testify. Art. 790, C. C. P. and cases collated in Vernon's Tex. Crim. Stats., Vol. 2, p. 716.

Appeal from the District Court of Dickens County. Tried below before the Hon. J. H. Milam, Judge.

Appeal from a conviction of murder; penalty, fifty years in the penitentiary.

The opinion states the case.

*W. D. Wilson,* of Spur, and *G. E. Hamilton,* of Matador, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of fifty years.

The State relied upon circumstantial evidence alone to support its theory that the appellant poisoned his father, Pete Hext. In substance, the evidence leading to that conclusion is this: Appellant had been an inmate of his father's house, but had left it and gone to the home of a neighbor some two weeks antecedent to the death of Pete Hext. Within the interval he had returned to the home of his father but one time, which embraced a few moments, five or ten, during the day time on Saturday preceding the death on Sunday. Four or five days before his death, the deceased had purchased from Doctor Hayney, who conducted a drug store, a mixture of medicine known as Adlerika, which had an agreeable taste and which was used in prescribed doses. During the morning of the day of his death, the deceased was at the drug store mentioned, in which there was kept in stock upon the shelves strychnine in various forms, including tablets. While the deceased was at the drug store, Doctor Hayney left on a professional call, and upon his return two or three hours later, was called to the residence of the deceased who was found in convulsions from strychnine poison. The bottle of Adlerika which had been opened and partly used was setting upon the landing of the stairway. The contents of the bottle was examined after the death of deceased and found to contain strychnine in poisonous quanities. Upon the arrival of Doctor

Hayney, he was informed by the deceased that he thought he had been poisoned and that he had taken nothing except that which was obtained from Doctor Hayney.

The deceased died on Sunday, June 1st. There was evidence that on the 29th of May, the appellant had purchased a bottle of powdered strychnine at a certain drug store in the town of Spur, which was some miles distant from the home of the deceased. The criminating circumstances were called in question by the cross-examinations, and some of them by controverting testimony. For example, there was testimony suggesting that the strychnine in the medicine was in tablets and not in powdered form; that the witness who testified that the appellant bought the strychnine was mistaken as to his identity; that the deceased, in complaining to the doctor, made no mention of the intense bitter taste of the medicine; that the appellant had no knowledge upon the occasion that he went to the home of the deceased for a few moments on Saturday that his father was making use of medicine. The sheriff testified that after the arrest of the appellant, he declared that he had bought no strychnine and had not been to the drug store conducted by Slayton.

A motion to continue the case was made to secure the testimony of two witnesses who would combat the claim of the State that the appellant was present at the drug store of Slayton at the time it was claimed that the strychnine was purchased, and to show that at that time he was at a point many miles distant.

On account of the disposition of the appeal, the complaint of the motion for a continuance will not be discussed.

The objection to the testimony of the physician touching the effect of strychnine poison upon the ground that in qualifying he revealed no personal experience is not tenable. It was competent that he qualify as an expert upon knowledge obtained from the study of books upon the subject. In Rice v. State, 49 Texas Crim. Rep. 669, the very point was decided in a case of strychnine poisoning. The principle was affirmed in English v. State, 85 Texas Crim. Rep. 450, and is recognized in Underhill's Crim. Ev., 3rd Ed., Sec. 189.

While the State's witness Pete Hext was testifying, the court permitted State's counsel to examine him with reference to testimony before the grand jury and to elicit the admission that he (the witness) had testified before the grand jury "that there was some trouble between the appellant and his father." If the witness had surprised the State's counsel by giving testimony injurious to the State's case, it might have been competent to impeach him by the reproduction of his testimony given before the grand jury. See Art. 815, C. C. P.; also cases collated in Vernon's Texas Crim. Stat., Vol. 2, p. 763. The bill is not in a condition which enables us to determine whether the procedure followed was authorized.

The mere failure of the witness to give the expected testimony would not have authorized his impeachment.

In receiving the testimony to the effect that there was an insurance policy upon the life of the deceased and that. he possessed an estate, the court committed no error. Appellant bing his son and, under the statute, an heir of the deceased, the testimony suggested a probable motive for the homicide. See Underhill's Crim. Ev., 3rd Ed., 503; Johnson v. State, 48 Texas Crim. Rep. 423.

In. refusing to charge the jury that they must accept as true the declaration of the appellant that he had not purchased the strychnine, the court, in our opinion, was not in error. The declaration introduced by the State was neither a confession nor an admission. It was not relied upon to prove the guilt of the appellant. In fact, he being under arrest, it would not have been admissible at all had the appellant made proper objection to it. These facts do not bring into operation the principle announced in Slade's case, 29 Texas Crim. Rep. 381, namely, that where the State relies upon a confession introduced by it which contains exculpatory declarations, these are to be taken as true unless disproved. The distinction is clearly announced and illustrated in Trevinio's case, 48 Texas Crim. Rep. 207.

It is made to appear in a bill of exceptions that the appellant did not testify as a witness in his own behalf; that in his argument before the jury, the county attorney made these remarks:

"If the defendant had not bought the poison, he would have said so, and would have introduced witnesses to prove he did not buy the poison."

The testimony from the State's witnesses is affirmative and uncontradicted that at the time it is claimed the witness Slayton sold appellant the strychnine, no persons were present save · Slayton, Gibson and the appellant. Slayton and Gibson were both used by the State and testified on the particular point under discussion, and therefore, all who could testify on the subject, save. the appellant. The remark, "If the defendant had not brought the poison, he would have said so," was under the facts before the court obviously a comment upon the failure of appellant to testify in his own behalf, and was violative of the statute which declares "that the failure of the defendant to testify shall not be alluded to or commented upon by counsel in the cause." (Art. 790, C. C. P.) Obedience to th estatute is imperative and transgressions of its provisions have been uniformly held to demand a reversal. See cases collated in Vernon's Texas Crim. Stat., Vol. 2, p. 716. The court in the present instance instructed the jury to disregard the remarks but in view of the verdict it cannot be said that the effort of the learned trial judge to obviate the injury resulting from the disobedience of the statutory command were successful. That the wrong was calculated

to prejudice the cause of the accused is manifest; its effect is at best a subject of conjecture. The comment on the appellant's failure to deny the vital criminating item cannot be regarded in other light than an effort to induce the jury to do that which the statute inhibits, namely, to convict the accused because of his silence on the trial of his case, rather than upon the evidence adduced to prove his guilt. A new trial should have been granted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*