Terry Wayne GOODMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 62037.

Court of Criminal Appeals of Texas,
En Banc.

March 14, 1984.

J.R. Musslewhite (on appeal only), Houston, for appellant.

Carol S. Vance, Former Dist. Atty., Alvin M. Titus and R.P. Cornelius, Former Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for murder. The punishment, enhanced by allegation and proof of a prior felony conviction, was assessed by the jury at life imprisonment.

At the outset we are confronted with appellant's contentions that the State was permitted, over objection, to improperly impeach three of its own witnesses without the necessity of laying the proper predicate.

The body of the 21-year-old deceased was found in a wooded area of Harris County. He had been cut and stabbed nine times, and had been castrated. His penis had been amputated and stuffed into his mouth. Smears from the deceased's rectum revealed the presence of spermatozoa. Among other pieces of paper, a note was found nearby which stated, "In the beyond, he'll think twice where he puts it." A yellow baseball-style cap was also found. The medical examiner concluded the deceased bled to death from his wounds.

The deceased was known to be a drug using homosexual who frequented gay bars in the Houston area. He worked with and for the appellant as a carpet layer. He had told others that he and the appellant were lovers. Other witnesses revealed the deceased, known as Cory, had indicated he had been abused by the appellant. There was a dispute over pay, and Cory had stated he was thinking of "getting out of the mess he was in and marrying a girl from Austin."

The night the deceased disappeared, he went to a homosexual friend's apartment. They later went to the Old Plantation bar and split up. The friend saw the deceased leave with another man. There was no positive identification that the man was appellant.

There were no eyewitnesses to the offense, and no one placed appellant and the deceased together in the area where the

body was found. A handwriting expert expressed the opinion the note found was in appellant's handwriting. While some State's witnesses stated the appellant frequently wore a yellow cap like the one found, the State's chemist stated the hair specimens found in the cap did not match known hair specimens of the appellant.

This was basically the State's case at the time Sheila Albin was called as a witness for the prosecution.

Sheila Albin testified that she had known the appellant for six years and had dated him prior to her common law relationship with Mike Albin. Almost from the beginning the prosecutor was belligerent with his own witness, accusing her of attempting to hide appellant in a motel, etc. The prosecutor established that about September 17, 1977, Albin had a conversation with Detective Steve Graeter of the Sheriff's office and Jim Howard, a district attorney's investigator. The record reflects:

"Q What did you tell him [Graeter] Terry had told you about the murder? [1]

"A I didn't tell him Terry had told me anything about the murder.

"Q Do you deny telling Detective Graeter that 'Terry confessed to me that he committed the murder'?

"A "MR. TISE: Your Honor, again, I'll object. He's leading the witness. He's treating her as a hostile witness.

"THE COURT: That's overruled.

"Q (By Mr. Cornelius—Assistant District Attorney): Do you deny telling Detective Graeter that Terry told you he committed the murder?

"A Yes, I do.

\*　　\*　　\*　　\*　　\*　　\*

"Q Do you recall making the statement to Detective Graeter and Jim Howard that Terry told you, and was bragging, about having sex with Cory?

"A No, I did not tell him that.

\*　　\*　　\*　　\*　　\*　　\*

"Q Didn't he (Terry) say that he had committed the perfect crime and gotten smooth away with it?

"A No, he did not tell me that.

\*　　\*　　\*　　\*　　\*　　\*

"Q ... Didn't you tell them that Terry told you that?

"A No.

"Q Didn't you tell them in that conversation several times that Terry told you he had committed a perfect crime?

"A No.

\*　　\*　　\*　　\*　　\*　　\*

"Q Isn't it a fact he told you that he was glad the son of a bitch got killed and he deserved it?

"A No.

"Q Aren't those your exact words?

"A No, it is not.

MR. TISE: Your Honor, again we object. He's attempting to impeach his witness.

"THE COURT: That's overruled.

\*　　\*　　\*　　\*　　\*　　\*

"Q That's not what you told me back there (consultation room); not more than five minutes ago, you told me you told them the truth; didn't you?

"MR. TISE: Your Honor, he's attempting to impeach his own witness.

"THE COURT: That's overruled."

The prosecutor then informed the witness her conversation with the two officers had been taped. The record then reflects:

"A He (Graeter) asked me ... if it was Terry's hat.

"Q And what did you say?

"A I told him, 'I can't be sure.

"Q That's funny; the tape said, 'Yeah, that's Terry's ...' is your reply. Which one is true? Did you identify the hat or not?

"A I said that that could be Terry's; there's no way that I can just look at a

---

**1.** It is observed that the prosecutor did not ask the witness what the appellant had told her, but inquired what she told the officer the appellant had related to her about the murder.

hat, and there's millions of them like it and say: Yes, that is Terry's.

    \*      \*      \*      \*      \*      \*

"Q Now, in view of the fact that you know now that we had that conversation tape-recorded ...

"Q Do you admit telling Steve Graeter ... whether it's true or not, that Terry had confessed to you?

"A No.

    \*      \*      \*      \*      \*      \*

"Q Do you remember telling Steve Graeter and Jim Howard, whether it's true or not, that Terry told you he committed the perfect crime and got smooth away with it?

"A No, Terry did not tell me that."

Thereafter the prosecutor, without establishing the authenticity of the tape, asked questions of Albin and then impeached her by playing portions of the tape. Jim Howard was later called and impeached Albin's testimony that Terry had never confessed to her he committed the murder and that he never told her he had sex with the deceased. Howard also impeached Albin's testimony that she did not identify the cap or hat as the appellant's.

Joe Paul, an inmate of the Department of Corrections, was called as a State's witness. He admitted he was in jail with the appellant when the murder charge was first dismissed and appellant was brought back to the lockup. He then denied appellant made a statement to him about the murder. The prosecutor then attempted to call his attention to a conversation with him in the outer office 10 minutes before. Appellant's objection that the prosecutor was attempting to impeach his own witness was overruled. Paul then denied appellant had told him he had "beat the case" and committed the perfect crime or that he told the prosecutor that. Paul also denied appellant asked him to be an alibi witness or that he told the prosecutor that. Robert Morrow, intern in the D.A.'s office, was then called by the State. He stated he was present with the prosecutor when Paul

made the statements he denied, thus impeaching Paul's testimony.

The prosecutor also impeached State's witness Helen Gilvarry's testimony that she did not identify the cap as the appellant's.

At no time did the prosecutor attempt to claim and demonstrate surprise or prove that testimony of any of the three witnesses was injurious to the State's case.

Article 38.28, V.A.C.C.P., provides:

"A party may, when testimony of his own witness is injurious to his cause, attack the testimony in any other manner except by offering evidence of the witness' bad character."

■ Before an attorney or party is allowed to impeach his own witness, he must establish the proper predicate by showing not only that the testimony has surprised, but also that it is injurious to his cause. *Puckett v. State,* 640 S.W.2d 284 (Tex.Cr. App.1982); *Houston v. State,* 626 S.W.2d 43 (Tex.Cr.App.1981); *Dove v. State,* 623 S.W.2d 346 (Tex.Cr.App.1981); *Lewis v. State,* 593 S.W.2d 704 (Tex.Cr.App.1980); *Hunnicutt v. State,* 523 S.W.2d 244 (Tex. Cr.App.1975); *Brown v. State,* 523 S.W.2d 238 (Tex.Cr.App.1975); *Williams v. State,* 521 S.W.2d 250 (Tex.Cr.App.1975); *Smith v. State,* 479 S.W.2d 311 (Tex.Cr.App.1972).

■ Since the issue of surprise is to be determined by the court and not the jury, *Gauntt v. State,* 169 Tex.Cr.R. 520, 335 S.W.2d 616 (1960), the attorney should request the court to conduct a hearing outside the presence of the jury. A mere claim of surprise or statement to the court to that effect is insufficient to allow impeachment. *Banks v. State,* 510 S.W.2d 592 (Tex.Cr.App.1974). See also *Ortega v. State,* 659 S.W.2d 35 (Tex.Cr.App.1983); *Puckett v. State,* supra; *Houston v. State,* supra; *Dove v. State,* supra. Surprise must be demonstrated. *Zanders v. State,* 480 S.W.2d 708 (Tex.Cr.App.1972); *Bostick v. State,* 363 S.W.2d 474 (Tex.Cr.App.1962); *Crandall v. State,* 170 Tex.Cr.R. 229, 340 S.W.2d 36 (1960); *Thrash v. State,* 170 Tex.Cr.R. 97, 338 S.W.2d 447 (1960); *Rel-*

*tan v. State,* 167 Tex.Cr.R. 649, 322 S.W.2d 529 (1959).

The attorney attempting to impeach his own witness may testify as to surprise and call other witnesses to demonstrate the same. In order to demonstrate surprise the party must show prior conversations with or statements by the witness, outside the presence of the jury. *Lewis v. State,* supra; *Hunnicutt v. State,* supra; *Williams v. State,* supra; *Norwood v. State,* 486 S.W.2d 776 (Tex.Cr.App.1972).

Foreknowledge of a witness' testimony precludes impeachment even though such testimony is decidedly adverse on a vital issue. *Wall v. State,* 417 S.W.2d 59 (Tex.Cr.App.1967). See also *Brown v. State,* supra; *Perkins v. State,* 433 S.W.2d 712 (Tex.Cr.App.1968); *Hollingsworth v. State,* 78 Tex.Cr.R. 489, 182 S.W. 465 (1916); *Perrett v. State,* 75 Tex.Cr.R. 94, 170 S.W. 316 (1914).

If the witness admits he made a contrary statement but states he made it by mistake, and prior to trial informed the calling party of such fact, surprise is not shown and the statement should not be used to impeach him. *Ware v. State,* 92 S.W. 1093 (Tex.Cr.App.1906); *Wall v. State,* supra; *Perkins v. State,* supra.

The purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness whom the party knows in advance will testify adversely and then, under the guise of impeachment, present before the jury the testimony which the party would have hoped to elicit from the adverse witness. *Brown v. State,* supra; *Williams v. State,* supra; *Webb v. State,* 503 S.W.2d 799 (Tex.Cr.App.1974); *Cherb v. State,* 472 S.W.2d 273, 278 (Tex. Cr.App.1971).

If the party demonstrates surprise, it is incumbent that the party also show that the witness' testimony is injurious to his cause. *Mims v. State,* 159 Tex.

Cr.R. 180, 261 S.W.2d 727 (1953); *Butcher v. State,* 104 Tex.Cr.R. 464, 284 S.W. 219 (1926). It is not sufficient that the witness merely fails to testify as expected or remembers facts favorable to the calling party. *Puckett v. State,* supra; *Houston v. State,* supra; *Brown v. State,* supra; *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App. 1974); *Perkins v. State,* 433 S.W.2d 712 (Tex.Cr.App.1968); *Wall v. State,* 417 S.W.2d 59 (Tex.Cr.App.1967); *Crandall v. State,* supra; *Solomon v. State,* 162 Tex. Cr.R. 374, 285 S.W.2d 755 (1956); *Hext v. State,* 100 Tex.Cr.R. 24, 271 S.W. 81 (Tex. Cr.App.1925). If the calling party has offered no evidence to prove a relevant fact, it cannot be said that the witness, through denial of the existence of such fact, has by such denial stated facts injurious to the calling party's cause. *Baum v. State,* 60 Tex.Cr.R. 638, 133 S.W. 271, 273 (Tex.Cr. App.1911); *Wall v. State,* supra. See also *Houston v. State,* supra.

If the facts supporting both surprise and injury are proved to the satisfaction of the court, then the proper predicate has been established and the attorney should be allowed to impeach the witness in the presence of the jury. A limiting charge to the jury on the impeachment testimony should then be given.[2]

In the instant case the State never claimed and demonstrated surprise nor showed injury to its case. It is clear that the State's witnesses did not testify as expected or failed to remember facts favorable to the prosecution. The State was confronted with mere failure of proof. See *Lewis v. State,* supra. No proper predicate was laid and the State erred in impeaching its own witness. While the error may be harmless in some circumstances, see *Houston v. State,* 652 S.W.2d 389 (Tex.Cr.App. 1983); *Ortega v. State,* supra; it was not in the instant case. The issue of guilt was hotly contested. The witness Albin, by denying that she told an officer the appellant had confessed to her that he had committed

---

**2.** Testimony admitted only for impeachment purposes is without probative value and cannot be considered in determining the sufficiency of

the evidence to support the conviction. *Key v. State,* 492 S.W.2d 514, 516 (Tex.Cr.App.1973), and cases there cited.

the murder, had had sexual relations with the deceased, and by denying she identified the cap as belonging to the appellant, did not by the denials, state facts injurious to the State's case. By denying the appellant told him he committed the murder and requested him to be an alibi witness, the witness Paul did not by the denials state facts injurious to the State's case. The same is true of the witness Gilvarry. Under the circumstances of the case, the errors were not harmless. See *Houston v. State*, 626 S.W.2d 43 (Tex.Cr.App.1982); *Dove v. State*, supra.

There were other errors as claimed by the appellant. They are not likely to occur in the event of a retrial. We need not consider the same in view of our disposition of the case.

The judgment is reversed and the cause is remanded.

TEAGUE, J., not participating.