Ronald Lee Peters vs. The State of Texas



In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-97-466 CR


____________________



RONALD LEE PETERS, Appellant



V.



THE STATE OF TEXAS, Appellee







On Appeal from the 163rd District Court


Orange County, Texas


Trial Court No. B-970101-R






O P I N I O N



 Following a plea of not guilty, Ronald Lee Peters was convicted by a jury for the
offense of aggravated sexual assault. Punishment was assessed by the court at fifty years
confinement in the Institutional Division of the Texas Department of Criminal Justice. 
Peters brings six points of error on appeal. 

 On January 25, 1997, Police officers Ted Picard and Thomas Verrett responded to
a call of an alleged sexual assault of a child at a mobile home in Vidor, Texas. Six persons
resided in the two bedroom mobile home: Shirley Knapp, A.K. (the victim), Buddy
Knapp, Buddy's wife and daughter, and Peters. Both Buddy and Peters are the sons of
Shirley. A.K. is Shirley's granddaughter by birth, and daughter by adoption. Thus,
Buddy and Peters are the biological uncles of A.K., but also her brothers by adoption. On
the date of the offense, A.K. was thirteen years old. Peters was thirty-four. 

 On the morning of the offense, Buddy entered Peters' room to wake him up, as they
were planning to go on an early morning fishing trip. Upon entering the room and turning
on the light, he witnessed Peters and A.K. engaged in oral sex. The police were called
and, during the ensuing investigation, A.K., Shirley, and Buddy each spoke with Officer
Picard and subsequently gave written statements alleging that Peters had sexually assaulted
A.K. Prior to and during the ensuing trial, A.K. recanted her prior oral and written
statements. In addition, at trial, both Shirley and Buddy testified they could not remember
the events of that morning. At the conclusion of the trial, the jury found Peters guilty of
the offense. 

 





LEGAL SUFFICIENCY 




 We begin by addressing Peters' sixth point of error in which he argues the evidence
is legally insufficient to sustain the conviction for aggravated sexual assault. He asserts
the court erred when it refused to grant his motion for an instructed verdict based upon
A.K.'s recantation and the insufficiency of the evidence. He contends the evidence does
not show that he intentionally or knowingly committed aggravated sexual assault. 


Standard of Review




 In reviewing the sufficiency of the evidence, we determine "whether, after viewing
the evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Santellan
v. State, 939 S.W.2d 155, 160 (Tex. Crim. App. 1997). This standard of review remains
the same for both direct and circumstantial evidence cases. See Geesa v. State, 820
S.W.2d 154, 159-61 (Tex. Crim. App. 1991). 







Aggravated Sexual Assault




 At the time of the offense, Texas law provided that a person commits an offense if
the person intentionally or knowingly causes the penetration of the mouth of a child by the
sexual organ of the actor, and if the victim is younger than fourteen years of age. (1)
 
Accordingly, the charge in the instant case instructed the jury on the elements of
aggravated sexual assault as follows: 

 [I]f you find from the evidence beyond a reasonable doubt that on or about
the 25th day of January, 1997 in Orange County, Texas, the Defendant,
RONALD LEE PETERS, did intentionally and knowingly cause the
penetration of the mouth of A.R.K., a child who was then and there younger
than 14 years of age and not the spouse of RONALD LEE PETERS, by the
sexual organ of RONALD LEE PETERS, then you will find the defendant
"guilty" of the offense of Aggravated Sexual Assault and so say by your
verdict. 



Factual Background




Peters' Statement


 We begin our review of the evidence by setting forth Peters' written statement given
to the police subsequent to his arrest: 

 I was asleep in my bedroom. My bedroom doors were closed. I was
sleeping in the nude. I woke up and found [A.K.] on top of me in the bed. 
 . . . . [A.K.] was giving me head. My brother, Buddy Knapp, walked into
the room and found us during the act. He told me to call the police and I did
so. I was in my own room with the doors closed and she came into my room
and did this without my permission. I told her you better get out of there but
that is when my door opened and my brother walked in. 

 This is the only time we have had sex of any type during the time I
have been living at this address. . . . . 


The State argues the jury could have determined Peters' guilt based on this statement
alone. (2) We disagree. In particular, the statement does not establish that he "intentionally
or knowingly" committed the offense. 


The Investigation at the Knapp Home; Prior Inconsistent Statements


 Officers Picard and Verrett described the hostile environment they encountered upon
their arrival at the Knapp residence. Buddy and Peters were sitting across from one
another on a couch. Peters sat quietly while Buddy, described by Picard as "irate" and
"upset," angrily made accusations that Peters had molested A.K. Shirley was "upset and
nervous," pacing in the kitchen. A.K. was sitting in a chair across from her
brothers/uncles and was "crying and upset." 

 At trial, Picard repeated the oral statements made to him by Shirley, Buddy, and
A.K. while at the Knapp residence. Over the defense's hearsay objection, Picard testified
that Shirley told him she was on the phone when Buddy came out of Peters' room. She
told Picard that Buddy hung up the receiver and "said something to the effect that they had
a real problem, they needed to talk now." She told the officer that "Buddy had told her
that he had caught [A.K.] giving Ron head." 

 Picard was informed by Buddy that A.K. had been sexually abused by Peters. Prior
to appellant interposing a hearsay objection, Picard testified regarding Buddy's statements
to him:

 [Prosecutor]:

 Q Did Buddy say anything in response to what Shirley had said? 

 A Buddy was saying a lot of things. He was very angry, telling me what
he had discovered them doing. He mentioned 'child molester' and stuff like
this. He was wanting to file charges.


 Q What specifically did Buddy tell you that he saw?


 A Buddy told me that he went into the room to wake Ron up to get him
up, they were going to go fishing. Said he turned on the light switch, he saw
[A.K.] on her knees at the bed, said that Mr. Peters, Ron Peters, was naked
and that [A.K.] had his penis in her mouth and she was giving him head." 


 Q I want to be real clear on this. Buddy Knapp told you that he saw his
penis in [A.K.'s] mouth?


 A Yes, sir, he said he caught them in the act, and I asked him, "Did
you?" and he said, "Yes, I did." 


 Officer Picard testified that while he was questioning the family members about the
incident, A.K. was "very upset" and "she was crying." The following testimony of Picard
as to A.K.'s statements to him was elicited without objection from the defense:

 I asked [A.K] as to what happened and she told me she went in to get her
shoes, that Mr. Peters was in bed. He pulled the blanket back, he was
naked, they started kissing and one thing led to another.

 I said, "What do you mean, one thing led to another?" And she said,
"He put his penis in my mouth and I gave him a blow job and Buddy walked
in on us." . . . . 


 All three family members subsequently gave written statements to the police alleging
that Peters sexually assaulted A.K. At trial, however, A.K. recanted her former
statements, and Buddy and Shirley testified they could not remember the events of the
morning of the offense. 


Testimony at Trial


 At trial, Buddy testified that when he walked into the room Peters was lying on the
bed naked and A.K. was on her knees by the side of the bed. He testified that he dialed
the phone number for the police and Peters talked to them. He admitted he was angry
about what he had witnessed that morning. When further questioned, Buddy testified it
was his belief that Peters sexually assaulted A.K. that morning. However, he stated it was
his belief at trial that he "might have been going overboard a little bit." Upon further
questioning about what he told the police that morning, Buddy stated, "Really, Honestly
-- to be honest with you, I don't remember a whole heck of lot about that morning. I was
kind of under the influence and it's kind of like a haze." Picard testified he did not see any
signs of Buddy being intoxicated that morning. 

 Buddy admitted that he had made a prior written statement and read a portion of it
at trial: 

 "I told [Peters] he could either leave the house by either him, Ron Peters,
calling the police department or by me calling the police department." "I'd
like to press charges on him for child molestation. . . . I found my sister,
[A.K.], on her knees on the floor in front of my brother's bed and
performing oral sex on him."


Although Buddy testified he could not remember writing the statement because at the time
he was "under the influence," over defense counsel's objections, he did admit to the
contents of his statement. 

 Shirley testified that she "observed nothing" and could not remember what
happened that morning. She admitted that she had given a statement to the police, but
testified the statement was all based on hearsay. 

 A.K. testified that the room Peters was staying in was formerly her room and
contained her personal effects. She stated she went into the bedroom to get her shoes. She
described the incident as follows: "[H]e was asleep, naked, but he had a blanket over him,
and I took the blanket off and stuck his penis in my mouth, and he woke up right as my
other brother walked in the room." She testified she did not recall telling Picard that
Peters had intentionally put his penis in her mouth. 

 A.K. admitted that she had given a statement to the police, (3) but testified that after
leaving the police station, she realized "how much trouble [Peters] could get in." A.K.
also admitted she had told detective Ray Moseley that Peters was smoking a cigarette when
she entered the room, that Peters was naked, and that she had asked Peters to stop because
it scared her. She also admitted telling the detective that she and Peters had been
discussing their relationship. She testified that it was all a lie, however, because she was
angry that Peters was dating a woman whom A.K. did not like. 


Analysis




 The prior oral and written statements of Shirley, Buddy, and A.K. were all made
out of court. Such statements are considered hearsay if offered at trial to prove the truth
of the matter asserted. See Tex. R. Crim. Evid. 801. (4) The statements do not fall within
a hearsay exception and, thus, are admissible solely for the purpose of impeachment. See
Tex. R. Crim. Evid. 612(a). "Testimony admitted for impeachment purposes is without
probative value and cannot be considered in determining the sufficiency of the evidence
to support the conviction." Goodman v. State, 665 S.W.2d 788, 792 n.2 (Tex. Crim.
App. 1984) (citing Key v. State, 492 S.W.2d 514, 516 (Tex. Crim. App. 1973)). 

 With the exception of the testimony regarding A.K.'s statements to Officer Picard
and detective Moseley, which were not objected to, the prior statements could not be used
by the jury in determining guilt. As impeachment evidence, however, the prior statements
reveal the collective inconsistencies of the statements made the day of the offense as
compared to those made at trial. This is an important consideration in this case. The
inconsistencies of the statements call into question the veracity of the witnesses. 

 At trial, Buddy testified he could not remember the events of the morning or the
statements he had made because he was "under the influence." Officer Picard testified,
however, that on the morning of the offense, Buddy was irate and upset and making angry
allegations toward Peters. Picard also testified that, in his opinion, Buddy did not appear
to be "under the influence" or intoxicated. Buddy admitted at trial that in his statement
he expressed his desire to file charges against Peters for "molestation." He also admitted
that it was his belief at the time that Peters had sexually assaulted A.K. 

 Likewise, Shirley's recollection had faded by the time of trial. Although she was
observed as "visibly upset" on the morning of the offense and voluntarily admitted she had
given a statement, Shirley testified at trial that she was "on major narcotic medication" and
"really didn't remember." 

 The greatest dichotomy was seen in A.K.'s account of the incident. Picard testified
that on the morning of the offense, A.K. stated to him that after she walked into the
bedroom, Peters "pulled the blanket back, . . . they started kissing, one thing let to another
. . . , [and] he put his penis in [her] mouth." At trial, however, she testified Peters was
asleep and did not wake up until just as Buddy walked into the room. She admitted at trial
to making a written statement, but testified that statement was a lie. 

 The evidence establishing that Peters intentionally or knowingly committed the
offense was Picard's testimony describing A.K.'s prior statements to him in which she
stated that Peters was awake and participated in the act. In the context of Tex. R. Crim.
Evid. 802, "unobjected to hearsay has probative value of substantive evidence." 
Fernandez v. State, 805 S.W.2d 451, 455, n.3 (Tex. Crim. App. 1991). In this case, the
testimony is direct evidence of the crime. See id. at 454, n.2 (testimony by officer
reflecting statements made by appellant's wife prior to trial, which were recanted by wife
at trial, was direct evidence because it is was "an inference from the assertion of a witness
to the truth of the fact asserted . . . ."). Here the jury was permitted to hear testimony
regarding Peters' direct participation in the sexual act. The jury was free to consider the
hearsay as "probative evidence, to be assessed and weighed along with, and equal to, the
other evidence admitted at trial." Id. In addition, A.K.'s admission that she told detective
Moseley that Peters was naked and smoking a cigarette when she entered the bedroom is
also probative evidence. This testimony has the effect of discrediting Peters' prior written
statement in which he stated he was asleep when A.K. entered the room. 

 As factfinder, the jury is entitled to judge the credibility of the witnesses and can
choose to believe all, some, or none of the testimony. Chambers v. State, 805 S.W.2d
459, 461 (Tex. Crim. App. 1991). The jury observed A.K.'s demeanor and the collective
inconsistent statements. It was entitled not only to reconcile any conflicts, but even to
disbelieve A.K.'s recantation. See id. In addition, the prior statements of Buddy and
Shirley have an "inherent indicia of trustworthiness" because they were "made closer in
time to the event in question." Fernandez, 805 S.W.2d at 455, n.3 

 This court is not to assume the duties of the trier of fact by "reweighing the
comparative probative value of the unobjected to hearsay and the declarant's in-court
testimony. Forrest v. State, 805 S.W.2d 462, 463 (Tex. Crim. App. 1991). The relative
probative value of this hearsay evidence was assessed by the jury in reaching its verdict. 
When the jury convicted Peters, it expressed its view that the hearsay evidence was
probative. Once a jury has made such an assessment, "an appellate court may not
reevaluate the probity of [an] individual item of evidence." Rodriguez v. State, 819
S.W.2d 871, 873 (Tex. Crim. App. 1991). "[T]he appellate court has only the discretion
to determine if any rational trier of fact could have, based on the evidence admitted at trial,
found the essential elements of the offense beyond a reasonable doubt." Id. (quoting
Fernandez, 805 S.W.2d at 456). 

 We conclude the evidence is legally sufficient to support the offense of aggravated
sexual assault. A rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. See Jackson, 443 U.S. at 318, 99 S.Ct. at 2788, 61
L.Ed.2d at 573. Peters' sixth point of error is overruled.


 EXCLUSION OF INVESTIGATOR




 In his first point of error, Peters argues the trial court abused its discretion by
granting the prosecution's request to have the defense's court appointed investigator
excluded from the court room. According to Peters, during trial, the prosecutor
complained to the trial court that the defense's investigator was sitting in the courtroom. 
He asserts the court ordered her removal over the defense's objection that she was part of
the defense team.

 After a thorough review of the record, we do not find the prosecutor's statements
requesting the removal of the investigator, nor has Peters cited any such record reference. 
We do find Peters' objection to the removal of the investigator. That objection, however,
was not timely. To properly preserve an issue for appellate review, a defendant must
make a timely request, objection, or motion, stating the specific grounds for the desired
ruling. See Tex. R. App. P. 33.1. The objection must be made at the earliest possible
opportunity, as soon as the ground for objection becomes apparent. See Lagrone v. State,
942 S.W.2d 602, 618 (Tex. Crim. App.), cert. denied, ___ U.S. ___, 118 S.Ct. 305, 139
L.Ed.2d 235 (1997); Martinez v. State, 867 S.W.2d 30, 35 (Tex. Crim. App. 1993). In the instant case, the rule was invoked by the court at the beginning of trial. 
Although it is not clear from the record exactly when the investigator was excluded from
trial, Peters' objection to the exclusion of the investigator was not made until after the
State had presented its evidence and rested. Therefore, we find the objection was untimely
and not preserved for appellate review. Peters' first point of error is overruled. 

 In his second point of error, Peters argues his trial was prejudiced when the
prosecutor requested the removal of the investigator within the presence of the jury. He
argues the prosecutor's remarks prejudiced the jurors against the defense. As stated
above, after a thorough review of the record, we do not find the specific prejudicial
remarks to which Peters now complains of, nor has Peters provided citations to the record
directing our attention to such. Therefore, this point of error is waived. See Tex. R. App.
P. 38.1(h). 

 In his fourth point of error, Peters asserts that if this court determines there was no
error preserved on the issue of the investigator's exclusion from the courtroom and its
resulting prejudicial effect, then he did not have effective assistance of counsel at trial. He
contends the failure of defense counsel to object to the removal of the investigator hindered
his arguments on appeal.

 We examine ineffective assistance of counsel at the guilt/innocence stage of trial by
the standard enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), and adopted by Texas in Hernandez v. State, 726 S.W.2d 53 (Tex.
Crim. App. 1986). To prevail on an ineffective assistance of counsel claim, an appellant
must first establish that his counsel's representation fell below an objective standard of
reasonableness. Id. at 55. The appellant must then show a reasonable probability exists
that a different outcome would have resulted but for his trial counsel's professional errors. 
See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez, 726
S.W.2d at 55.

 The rule governing the exclusion of witnesses is embodied in former Rule 613 of
the Texas Rules of Criminal Evidence, which provides:

 At the request of a party the court shall order witnesses excluded so
that they cannot hear the testimony of other witnesses, and it may make the
order on its own motion. This rule does not authorize exclusion of (1) a
party who is a natural person, or (2) an officer or employee of a defendant
which is not a natural person designated as its representative by its attorney,
or (3) a person whose presence is shown by a party to be essential to the
presentation of his cause, or (4) the victim, unless the victim is to testify and
the court determines that the victim's testimony would be materially affected
if the victim hears other testimony at the trial. 


Tex. R. Crim. Evid. 613 (emphasis added). (5) Sequestration under Rule 613 is not
discretionary with the court. See Moore v. State, 882 S.W.2d 844, 848 (Tex. Crim. App.
1994). "By its own terms, the court shall order the witnesses excluded at the request of
a party or on its own motion." Id. However, the trial court is given discretion to decide
if a witness fits under one of the four exceptions to exclusion. Id. When making a
determination on the exclusion of a witness, a court should carefully consider "the critical
importance of the testimony" of the witness. See Aguilar v. State, 739 S.W.2d 357, 359
(Tex. Crim. App. 1987). 

 The "party seeking an exception under Rule 613 has the burden of showing that one
of the enumerated sections is met." Moore, 882 S.W.2d at 848. The Rule contains no
express exception for investigators. Therefore, it was Peters' burden, as the party seeking
exemption from the rule, to make a "showing" that the investigator fell under one of the
express exceptions to the rule. Trial counsel's argument fell under the third exception. 
His argument consisted of the following statement: 

 The court placed my court appointed investigator under the rule, and
would point out to the court that she was the investigator in this case, she is
very knowledgeable of these witnesses, and by her being removed during
these additional testimonies under the rule, that this is in violation of Mr.
Peters' right to effective counsel under the sixth amendment. 


 The State argues the trial court properly excluded the investigator because she was
a potential witness with personal knowledge of the relevant facts. (6) At trial, in response to
Peters' objection, the prosecutor argued as follows: 

 Judge, the state has information from the witnesses who were also
placed under the rule that they had direct contact with [the investigator]. 
There was -- there was some [sic] allegations regarding her conduct we are
concerned with. That still may hold true regarding Shirley Knapp's
testimony. I can't anticipate exactly what she's going to say. We have very
good reason to place her under the rule and she still is. The defendant is not
entitled to an investigator to sit with him at the time of trial. 


 The State contends it had designated the investigator as a potential witness to the
prior oral statements of Buddy, Shirley, and A.K. At the hearing on Peters' motion for
new trial, the investigator stated she had conversations prior to trial with various witnesses,
including Buddy, Shirley, and A.K. In her conversation with Buddy, Buddy told her that
he had a hangover that day and did not remember the morning of the offense. A.K. told
her that she (A.K.) was the person initiating the contact between her and Peters. The
investigator admitted that if these witnesses would have testified at trial to something other
than what they had stated in their prior conversations with her, she might have been called
as a witness on behalf of Peters. 

 Since the investigator was a potential witness in the case, we cannot say that the trial
court abused its discretion in excluding her from the courtroom. In light of the
discrepancies between the witnesses' prior statements and their subsequent testimonies at
trial, along with the prosecutor's explanation to the court that the investigator had direct
contact with the witnesses, we cannot say the trial court erred in placing the investigator
under the rule. Consequently, Peters has not shown that there is a reasonable probability
that the result of the proceeding would have been different absent his counsel's conduct in
failing to timely object to the exclusion of the investigator. Peters' fourth point of error
is overruled. 


BRADY EVIDENCE




 In his third point of error, Peters argues his due process rights were violated when
the State failed to produce all Brady evidence favorable to the defense. He argues the
prosecutor had material information regarding A.K.'s recantation and failed to inform the
defense of such. 

 "Due process requires the State to disclose exculpatory evidence to one accused of
a crime." Cook v. State, 940 S.W.2d 623, 626 (Tex. Crim. App. 1996) (citing Brady v.
Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). "[T]he government has
the duty to disclose exculpatory evidence, even in the absence of a request by the
defendant, if the withheld evidence, considered as a whole, results in a 'reasonable
probability' that a different result would have occurred." Id. at 626-27 (citing Kyles v.
Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1568-69, 131 L.Ed.2d 490 (1995)). 
"Impeachment evidence is included within the scope of the term 'exculpatory evidence.'"
McFarland v. State, 928 S.W.2d 482, 511 (Tex. Crim. App. 1996). The failure to
disclose impeachment evidence favorable to the defendant, however, is constitutional error
"only if its suppression undermines confidence in the outcome of the trial." Cook, 940
S.W.2d at 627 (citing United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d
481 (1985)). 

 The State argues the defense had actual knowledge of the victim's change in position
prior to trial. At the hearing on Peters' motion for new trial, the State questioned
witnesses regarding the Brady issue. A.K.'s testimony establishes that she had spoken
with the defense's investigator prior to trial, informing the investigator of her recantation. 
A.K. testified as follows: 

 [Prosecutor]:


 Q [A.K.], did you have an opportunity to talk to [the investigator]?


 A Yes.


 Q And when did you speak with her?


 A I don't know.


 Q In relation to the trial, when did you speak to her, a few days before,
a month before?


 A I couldn't honestly say. It was some time before the trial. . . . .


 . . . .


 Q How many times did you speak with her?


 A Maybe once or twice.


 . . . .


 Q Did you tell her what you're saying -- Did you tell her that the
written statement that you had given to [the police] was not correct?


 A Yes, I told her exactly what I told you. 


The investigator's testimony at the hearing for the motion for new trial also reflects that
A.K. had informed the investigator, prior to trial, of her change in position, and that
information was conveyed to defense counsel by the investigator:

 [Prosecutor]:


 Q Did [A.K.] ever say that the defendant initiated contact?


 A No. She said from the very beginning when I talked to her, that she's
the one that initiated the contact.


 Q [A.K.] told you that she initiated the contact?


 A Yes.


 Q And you told that to [defense counsel's] office?


 A I believe so, yes.


 . . . .


 Q You told [defense counsel] before trial what [A.K.] said?


 A Yes.


Furthermore, the testimony of Peters' trial counsel establishes that the investigator
informed him of A.K.'s statement to the investigator: 

 [Prosecutor]: 


 Q Did your investigator inform you that [A.K.] stated that the written
statement she had given [the police] previously was incorrect?


 A That it was a lie, yes. 


 Q Did your investigator inform you that [A.K.] related to [the
investigator] that she initiated sexual contact with her brother, Ronald Lee
Peters?


 A Yes. . . . .


 We conclude the record of the hearing on Peters' motion for new trial indicates the
defense had actual knowledge of A.K.'s recantation prior to trial. Therefore, Peters
cannot now complain on appeal of the State's failure to disclose the information to the
defense. See Carmona v. State, 698 S.W.2d 100, 105 (Tex. Crim. App. 1985) ("[I]f the
facts not disclosed are known by the defendant or his counsel, he cannot object on appeal
to the failure of the State to disclose the same."); see also Harris v. State, 453 S.W.2d
838, 839 (Tex. Crim. App. 1970). Since the defense had actual knowledge of the
recantation, Peters has failed to show "that a different result would have occurred," or
"that the government's failure to disclose the exculpatory evidence undermined confidence
in the outcome of the trial." See Cook, 940 S.W.2d at 626-27. Peters' third point of error
is overruled. 


PRE-ARREST SILENCE




 In his fifth point of error, Peters contends his fifth amendment right against self-incrimination was violated when a witness commented on the fact that he (Peters) was
sitting calmly and quietly after being read his Miranda rights. See Miranda v. Arizona,
384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 

 The testimony Peters complains of is that of Officer Verrett, one of the investigating
officers. Specifically, Peters complains about the following statements: [Prosecutor]:

 Q And the location of Ronald Lee Peters was where?

 A Sitting next to Buddy Knapp on the sofa.


 . . . .


 Q What was Mr. Buddy Knapp's attitude?


 A He appeared to be angry. When he was talking he was looking over
toward Mr. Peters, and Mr. Peters didn't say nothing. 


 [Defense Counsel]: Objection, Your Honor, I'm going to ask the
court to instruct the jury to disregard that comment. That certainly
is a violation of defendant's Fifth Amendment and Article I, section
10 of the Texas Constitution.


 The Court: The Jury will disregard the witness's last
statement. 


 The State argues Peters was not under arrest at that point in time, nor had his
Miranda warnings been given. Prior in time to the above elicited testimony, outside the
presence of the jury, Officer Picard was questioned about the chronological events leading
up to the arrest. 

 [Defense Counsel]:

 Q Did you at any time give Ron Peters his what we call Miranda
warning?


 . . . .


 A Officer Verrett did, yes, sir.


 Q Okay. And when did he give that?


 A Once I listened to what Buddy Knapp had to say and I confirmed it
with the little girl that it had occurred, [Peters] was placed under arrest. He
was in -- given his Miranda warning by Officer Verrett and he was
transported by Officer Verrett to the police department. 


 . . . .


 [Prosecutor]:


 Q Officer, when you arrived at the house, . . . , no matter who talked
to you first, did you at that moment place the defendant under arrest?


 A No, sir, I did not.


 . . . .


 Q After Buddy Knapp had spoken to you and told his version of what
happened before you spoke to anyone else, did you at that time place the
defendant under arrest?


 . . . .


 A No, sir. I didn't speak to Mr. Peters at all.


 Q At that moment he was not under arrest?

 A No, sir.

 Q At that moment what was Mr. Peters doing?

 A Mr. Peters was sitting there very quietly like I testified earlier.

 Q He has said nothing up at that point?

 A He said nothing, and I hadn't asked him nothing.

 Q Even after his brother made all these allegations?

 A Yes, sir.

 Q So you continued your investigation and then you went on to [A.K.],
is that right?


 A After speaking to Mr. Knapp and what he told me he had witnessed,
I spoke to [A.K.]. 


 . . . .


 Q . . . . At that moment, . . . , has he said a word?


 A No, sir, he hasn't said anything.


 Q Is he under arrest yet?


 A No, sir, not at that point. 


 We agree with the State that the officer's testimony was in reference to Peters'
silence prior to his arrest and prior to being given his Miranda warnings. "Prearrest
silence is a constitutionally permissible area of inquiry." Waldo v. State, 746 S.W.2d 750,
755 (Tex. Crim. App. 1988) (citing Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124,
65 L.Ed.2d 86 (1980)). No error occurred. Nevertheless, the trial judge sustained
appellant's objection and instructed the jury to disregard. In the unlikely event jurors
understood the officer's testimony to refer to Peters' post-Miranda silence, the error was
cured by the court's instruction to disregard. See id. Peters' fifth point of error is
overruled. 

 AFFIRMED.

 ________________________________

 EARL B. STOVER 

 Justice


Submitted on April 29, 1999

Opinion Delivered August 11, 1999

Publish


Before Walker, C.J., Burgess, and Stover, JJ.
1. See Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 7, 1995 Tex. Gen. Laws
2734, 2737 (amended 1997) (current version at Tex. Pen. Code Ann. § 22.021 (Vernon
Supp. 1999)). 

2. Peters did not testify at trial. 
3. The details of A.K.'s prior written statement were not revealed at trial.
4. Effective March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules
of Civil Evidence were merged to form the Texas Rules of Evidence. Because this case
was tried before the effective date of the new rules, we will apply the former Texas Rules
of Criminal Evidence. 
5. Currently Tex. R. Evid. 614.
6. We note that, at trial, the investigator was never called to testify as a witness by
the state or defense.