**William Sloan BROWN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 49837.**

Court of Criminal Appeals of Texas.

May 21, 1975.

---

Victor Hlavinka, Texarkana, for appellant.

Lynn Cooksey, Dist. Atty., Boston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for the offense of murder with malice, wherein the jury assessed the punishment at twenty (20) years' confinement in the Department of Corrections.

The sufficiency of the evidence is not challenged. The deceased was the ten month old stepdaughter of the appellant. He had met his wife, Jeanette, when she was seven months pregnant, and they married shortly after the birth of the deceased, Tina Renee Hicks.

Appellant's extrajudicial confession was introduced, which recited he started spanking the child when she was six or seven months old, and that when the child cried and didn't seem to want to have anything to do with him, he would lose his temper and spank her on the butt and legs, bruising her. He related one instance where he struck the child with a belt on the legs and in the face. One or two days before the death, he admitted he got "god-damn rough" and broke the child's leg. On the day of the death he, his wife, and the deceased child were riding in a pickup and the child

would not put any weight on her right leg, so he would place her hands on the dashboard and pull her left leg out from under her, trying to make her stand on the right leg. This was done a number of times, and each time the child's head would hit the dashboard. When the child started bleeding from the mouth and appeared unconscious, she was taken to the hospital. Much of the State's other testimony served to corroborate the confession. Drs. Bell and Smith testified to unsuccessful efforts to resuscitate the child after she was brought to the hospital by the appellant and his wife on August 12, 1973. Dr. Pope, who performed the autopsy, stated the cause of death was a blood clot in the brain which resulted from an injury to the head. All three doctors testified as to their observations of numerous bruises on the deceased's body.

Initially, appellant asserts the trial court abused its discretion in excluding seven witnesses from the Rule after he had asked that the Rule be invoked.

Appellant in his brief asserts that these were Lt. Slover, Detective Sanders and Officer Clingan of the Texarkana city police, Justices of the Peace Grigson and Burkhalter, Texas Ranger Max Womack, and Hubbard McDuffie, one of the grand jurors who returned the indictment in question.

When the Rule was invoked, the court, sua sponte, stated, "All of you gentlemen who are officers of this Court are excused from the Rule."

The appellant's counsel objected to excusing "the officers from the Rule" and the court stated, "The exception is noted." When appellant's counsel inquired if it be necessary to object to each officer's testimony "as he begins," the court replied in the negative and stated the record showed the objection and the exception was noted.

Nowhere in this record are the "officers" excused from the Rule identified, and we are unable to tell which witnesses

were actually excused at the time. It is well established that this court cannot accept as fact allegations or assertions in an appellate brief which are not supported by the record. See Washington v. State, 500 S.W.2d 485 (Tex.Cr.App.1973); Devereaux v. State, 473 S.W.2d 525 (Tex.Cr.App. 1971).

We have carefully examined the record to determine if it reflects which witnesses may have heard the testimony in the case. Ranger Womack, who briefly testified only at the *Jackson-Denno*-Article 38.22, Vernon's Ann.C.C.P. hearing on the admissibility of the confession in the absence of the jury, related he had been present during the testimony of Officers Slover and Sanders and Justice of the Peace Grigson during such hearing. Officer Clingan was asked during his testimony before the jury if he had been present "during any interrogation of any witness" at the trial, and he replied in the affirmative. The matter was not pursued and it was not established which witness or witnesses he heard. Justice of the Peace Burkhalter, when asked if he was present during the interrogation of any other witness, stated, "Only just a little bit this morning . . . of Mrs. Brown."

It is observed that none of these witnesses were ever asked if they had been among those who had been excused from the Rule by the court.

■ In light of the record before us and the lack of identity of the witnesses excused from the Rule as "officers of this Court," we cannot conclude that error is shown.

■ Even if a witness violates the Rule and the court nevertheless permits the witness to testify, the matter is one addressed to the discretion of the court and, until the contrary appears, it will be presumed on appeal that such discretion was properly exercised. Owens v. State, 503 S.W.2d 271 (Tex.Cr.App.1974); Murphy v. State, 496 S.W.2d 608 (Tex.Cr.App.1973).

The Rule is provided for in Article 36.03, Vernon's Ann.C.C.P., and the enforcement of the Rule is in the discretion of the court. See Article 36.04, Vernon's Ann.C.C.P.

■ It is well established that the object to be attained by placing witnesses under the Rule is to prevent one witness from being influenced by the testimony of another, Carlile v. State, 451 S.W.2d 511, 512 (Tex.Cr.App.1970), and cases there cited. While wide discretion is confided in the trial judge with regard to application of the Rule, the discretion granted is not an arbitrary discretion. Carlile v. State, supra. Trial judges, in all fairness, are cautioned not to make, sua sponte or otherwise, wholesale exclusions from the Rule under the guise of excusing "officers of the Court," thus permitting the material witnesses of one party to remain in the courtroom while the witnesses for the other party are excluded, even though that practice has long prevailed in certain counties. Only recently in King v. State, 511 S.W.2d 32 (Tex.Cr.App.1974), this court stated in footnote #5, "It should be noted that law enforcement officers who are witnesses in a case are not officers of the court unless they are acting in a limited capacity as bailiffs (see Art. 36.24, V.A.C.C.P., forbidding a witness to serve as bailiff) or in some other capacity as instructed by the judge."

For the reasons stated, however, the appellant's initial contention is overruled.

Appellant further complains that the State was improperly permitted to impeach its own witness, Vera Brown, without laying a predicate to show surprise.

■ Much confusion seems to exist among the bench and bar about when a party may impeach its own witness. It is well established, however, that a party may not impeach his own witness *unless the witness testifies to facts injurious to that party's case and that party demonstrates that he was surprised by such testimony.*

See Article 38.28, Vernon's Ann.C.C.P.; Banks v. State, 510 S.W.2d 592 (Tex.Cr.App.1974); Wood v. State, 511 S.W.2d 37 (Tex.Cr.App.1974). It is not sufficient in laying the predicate for impeachment for the party to claim or merely state to the court that he has been surprised. He should demonstrate surprise by the procedure outlined in Pelton v. State, 167 Tex.Cr.R. 649, 322 S.W.2d 529 (1959), by showing outside the presence of the jury his prior conversations with the witness or the prior statement, etc. Banks v. State, supra; Williams v. State, 521 S.W.2d 250 (Tex.Cr.App.1975).

 It is simply not sufficient to justify impeachment that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness. Zanders v. State, 480 S.W.2d 708 (Tex.Cr.App.1972); Wood v. State, supra. It is this point which is not understood by many lawyers. It should also be remembered that foreknowledge that a witness will testify as he does precludes impeachment though testimony given is decidedly adverse on a vital issue. Wall v. State, 417 S.W.2d 59 (Tex.Cr.App.1967). The purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness who the party knows will testify adversely to such party and then, under the guise of impeachment or cross-examination, present before the jury evidence which the party would have hoped to elicit from the adverse witness. Cherb v. State, 472 S.W.2d 273 (Tex.Cr.App.1971); Webb v. State, 503 S.W.2d 799 (Tex.Cr.App.1974).

 With this background, we now turn to the facts of the instant case. The State called the 14 year old sister of the appellant, Vera Brown, as its witness and elicited from her appellant's actions toward the deceased on Friday evening prior to the deceased's death on Sunday. During the direct examination of this witness, the jury was retired and the district attorney claimed surprise, saying the witness was testifying "one hundred and eighty degrees in reverse . . ." from a prior statement given to the police. No evidence was offered to lay the predicate to show surprise or that the witness had stated facts injurious to the State. It appears that the witness had not testified as expected and the testimony was not as damaging to the appellant as the district attorney had hoped for. The court, after having interrogated the witness, without having established the necessary predicate by its questioning, permitted the State an opportunity to impeach its own witness. In this the court was in error, for the proper predicate had not been laid. We do not, however, perceive reversible error.

 When the jury was returned, the witness was shown her prior statement, which she admitted signing, and then she was read portions of it and she admitted the statement correctly related the facts. This is similar to Wright v. State, 422 S.W.2d 184 (Tex.Cr.App.1967), wherein the court overruled a contention that the State improperly impeached its own witness where the witness was shown her prior statement and admitted the statement correctly reflected what happened. There, the court said, "In light of the admission by Mrs. Banker that the quoted part of her written statement correctly related the facts, the appellant's contention is overruled." See also Cherb v. State, 472 S.W.2d 273, 277 (Tex.Cr.App.1971); Walker v. State, 473 S.W.2d 497, 499 (Tex.Cr.App.1971). In the instant case the witness' admission that the statement was correct merely added additional damaging facts to the case and was explanatory of her earlier testimony and not necessarily inconsistent therewith. Appellant's contention is overruled.

 Appellant also complains that the court improperly permitted the State to impeach its own witness, Jeanette Brown,

appellant's wife, without laying the proper predicate therefor. We cannot agree. After the witness had been called by the State[1] and had testified for some time, the jury was removed and interrogation of the witness revealed that she had given a prior statement to the police and had testified before the grand jury; that since that time she had only told the prosecution she would tell the truth, and that she had never approached the district attorney or his assistants and said that her testimony would be different from her prior statement or grand jury testimony. Charles Hall, assistant district attorney, testified that he had shown the witness her prior statement the day before and she had not indicated or related that she would testify differently. Hubbard McDuffie, a former grand juror, testified as to the witness' testimony before the grand jury, and Officer Clingan was called to prove that he had taken the prior statement from the witness. It is clearly evident from the record that the procedure utilized was similar to that recommended in Pelton v. State, supra, for laying the predicate for impeachment of one's own witness and adequately demonstrated that the State was surprised, and the record further reflects that the witness had testified to facts injurious to the State when she testified, among many other things, that appellant had not beaten the deceased, etc., etc. Despite the fact that the predicate was properly established, the court refused the State permission to impeach. Subsequently, the court, after cross-examination of the witness, reconsidered its rulings and allowed the State an opportunity to impeach. When confronted with her prior statement, she admitted many times during her interrogation that what was said there was true and in effect conceded that it was inconsistent with her earlier trial testimony. Under these circumstances, she performed the act of impeachment upon herself. See Hoffman v. State, 514 S.W.2d 248, 251 (Tex.Cr.App.1974).

We conclude that a proper predicate was laid for impeachment and further reject appellant's claim that the record reflects pre-knowledge by the State of the witness' testimony given earlier in the trial.

■ Lastly, appellant complains of the court's failure to give his special requested charge on accident. See Article 39, Vernon's Ann.P.C., 1925. We have examined the quoted portions of the record which appellant sets forth in his brief, as well as the entire record, and cannot conclude that the evidence raises the issue of accident, although the issue of negligent homicide may have been raised thereby.

In Stiles v. State, 520 S.W.2d 894 (Tex. Cr.App.1975), this court said:

"The difference between accidental homicide and negligent homicide is whether the *act* resulting in death was *intentionally* or *unintentionally* done. The focus is on the accused's act, not on the result of his act. Accidental homicide is the result of an unintentional act while negligent homicide may only result from an intentional act." See also Esparza v. State, 520 S.W.2d 891 (Tex. Cr.App.1975); McKenzie v. State, 521 S.W.2d 637 (Tex.Cr.App.1975); Palafox v. State, 484 S.W.2d 739 (Tex.Cr. App.1972).

The testimony relied upon by the appellant clearly show his acts toward the deceased were intentional, such as pulling her left leg out from under her while attempting to make her stand on her in-

---

1. Article 38.11, Vernon's Ann.C.C.P., provides in part:
 " . . . a wife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or against any child of either under sixteen years of age . . . ."

jured right leg. While the testimony referred to might reflect that the act was one of carelessness and negligence, it still was intentional. Appellant's contention is without merit.

The judgment is affirmed.

ROBERTS, J., concurs in the result.