**Ray HOUSTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65221.**

Court of Criminal Appeals of Texas, Panel No. 2.

Dec. 2, 1981.

Rehearing Denied Jan. 20, 1982.

Jose E. Camacho, Austin, for appellant.

Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for voluntary manslaughter. Punishment was assessed by the jury at eight years confinement. The sufficiency of the evidence is not challenged.

In his third ground of error, appellant contends that the trial court erred in allowing the State to impeach its own witness. We agree.

The error occurred when the State called appellant's brother, Frank Houston, to the stand. Frank stated that he was in Dorn's Grill playing pool when he saw his brother sitting in the corner of the room. The deceased, Austin Harper, was sticking his fingers in appellant's face and arguing with him. Frank said they argued for a few minutes, then Frank saw his brother grab Harper and start hitting him. Frank said he did not see a knife in appellant's hand, but he did see blood coming from the deceased. Frank testified that when he saw the two fighting, he ran over and pulled the appellant away from the deceased.

The prosecutor then asked the appellant's brother,

"Q. After you attempted to get in between your brother and Austin Harper and break up the fight, did your brother continue hitting Austin Harper after that?"

[The appellant objected on grounds that the question was leading. The court instructed the prosecutor to rephrase the question.]

Q. After you got in between them, was there any more struggling occurring between—
A. No, sir.
Q. —Your brother—
A. No, sir."

At this point, the appellant objected and the attorneys for both sides approached the bench. Defense counsel objected to the State's attempt to impeach its own witness. The objection was overruled.

In the presence of the jury, the prosecutor asked Houston if he recalled giving a statement to the Luling Police. Houston replied that he did. Prosecutor Van Horn asked the witness to read the statement, but Houston responded that he did not know how to read.

The appellant again objected that the witness' statement was not in evidence and that the State was improperly attempting to impeach its witness. The jury was retired from the courtroom, and the prosecutor testified that the State had in its possession a written statement given by the witness to the Luling Police Department after the stabbing, wherein the witness stated that the appellant continued to strike the deceased after the witness had intervened and pulled the appellant away. Van Horn stated that it was a surprise to the State that Frank Houston would testify that no further struggle occurred after he intervened in the fight.

Still outside the presence of the jury, the prosecutor read a portion of the statement to Houston "for the purpose of refreshing his memory."

The prosecutor stated:
"Mr. Houston, I'm going to read a portion of this statement that you signed. 'At this time, I tried to get in between them and Harper began to run outside. My brother grabbed Harper's shirt while they were still inside, but he got away. Harper made it outside and my brother continued to hit him and blood poured from the wounds.' Does that refresh your memory as to what occurred that night?
  *     *     *     *     *     *

THE WITNESS: Yes, I understood it but it's just that it's been so long, sir. You can't hardly memorize all the details that were wrote down.
MR. VAN HORN: You say you cannot remember?

THE WITNESS: I remember some of it, but I don't remember all of it.

* * * * * *

MR. VAN HORN: What parts do you remember?

THE WITNESS: I remember when my brother grabbed him. He started out from the door.

MR. VAN HORN: You don't remember your brother continuing to hit him after you intervened and tried to break it up?

THE WITNESS: I broke it up as they got out of the door and then he went on home.

MR. VAN HORN: That's not what the statement says that I just read to you.

MR. CAMACHO: Your Honor, he's trying to impeach his own witness.

MR. VAN HORN: I'll agree with that. Now, at this point, I am, Your Honor, and I assume that's all we need outside the presence of the jury.

THE COURT: All right. Bring in the jury."

When the jury returned to the courtroom, the prosecutor showed the witness his prior statement, marked State's Exhibit # 3. The prosecutor read the portion of the statement quoted above. The prosecutor then asked the witness,

> "Do you recall making that statement to the Luling Police Department?
>
> A. Sure didn't. I didn't tell them that he got away.
>
> Q. Did you tell them that your brother continued hitting him after—
>
> A. Sure didn't.
>
> Q. —After he tried to break it up?
>
> A. Sure didn't.
>
> Q. Well, are you saying that that's not true or you just don't remember telling them?
>
> A. That's not true."

▪ It is well settled that a party may not impeach his own witness unless the witness testifies to facts injurious to that party's case and the party demonstrates that he was surprised by such testimony. *Cole v. State*, 611 S.W.2d 79 (Tex.Cr.App. 1981); *Lewis v. State*, 593 S.W.2d 704 (Tex.

Cr.App.1980). See *Zanders v. State*, 480 S.W.2d 708 (Tex.Cr.App.1972). To demonstrate surprise, the party must show prior conversations with or statements by the witness outside the presence of the jury. *Lewis v. State*, supra; *Hunnicutt v. State*, 523 S.W.2d 244 (Tex.Cr.App.1975). The State in the instant case satisfied the requirement of surprise by showing that the prior statement of the witness was not consistent with his trial testimony. However, the State must also demonstrate, in order to justify impeachment of its own witness, that witness testified to facts injurious to its case.

▪ It is not sufficient that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness. *Brown v. State*, 523 S.W.2d 238 (Tex.Cr.App.1975); *Wood v. State*, 511 S.W.2d 37 (Tex.Cr.App.1974). *If the State has offered no evidence to prove a relevant fact, it cannot be said that its witness who denies existence of that relevant fact has by that denial stated facts injurious to the State's case. Wall v. State*, 417 S.W.2d 59 (Tex.Cr.App.1967).

In *Lewis v. State*, supra, the State's witness testified at trial that she saw the deceased's car going down the road with the defendant's car behind it. The witness stated that the vehicles "did not seem to be going too fast." After this testimony, the State claimed "surprise" and, outside the presence of the jury, produced a prior statement by the witness, wherein the witness stated that the deceased passed her in his car and the defendant was right behind him, driving fast and close behind him. The witness stated that it appeared the defendant was chasing the deceased.

▪ This Court concluded in *Lewis* that the witness did not testify to facts injurious to the State's case, "[r]ather, the State was confronted with a mere failure of proof, when the witness failed to testify as expected." Likewise, in the instant case, the State was confronted with a failure of proof when the witness failed to testify as

expected. The witness, Frank Houston, by denying the existence of a relevant fact,[1] has not, by the denial, stated facts injurious to the State's case. See *Wall v. State*, supra.

We hold that the trial court erred in allowing the State to impeach its witness. Further, we conclude that the error requires reversal. In the instant case, as in *Lewis v. State*, supra, the stabbing of the deceased by appellant was not disputed; however, the appellant maintained that the killing was done in self-defense. Two eyewitnesses to the offense testified for the State, the appellant's brother and David Forcey, the deceased's cousin. Forcey testified that the deceased was trying to start a fight with appellant, but that the appellant told him, "Why don't you leave me alone, man." Then the deceased pushed the appellant, the deceased had a knife or piece of glass in his hand at the time. The deceased told appellant, "You put me in my grave or I'll put you in yours." The appellant went inside the bar and the deceased followed him. The deceased's shirt was open and his open knife was "right between his belt buckle". The deceased threatened the appellant, stuck his fingers in appellant's eyes and pushed appellant. Forcey stated that the two men then started hitting each other. There was other evidence that the deceased had a reputation for violence. Significantly, the jury was concerned enough about the testimony of Frank Houston to write the following note to the judge during their deliberations, "Frank's direct testimony on the fight—did Frank say Ray continued to stab Harper when he separated them during fight in pool hall?" Under these circumstances, we cannot say that Frank Houston's prior statement, admitted as impeachment rather than direct evidence did not harm appellant.

Accordingly, the judgment is reversed and remanded.

1. Both parties agree that evidence that the appellant continued to attack the deceased after Frank Houston intervened would be relevant to the case. The State in its brief argues that such evidence was manifestly part of the State's case in order to prove the intentional killing of the deceased.