Leanne Marie PITTS, Appellant,

v.

STATE of Texas, Appellee.

No. 01–85–00683–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 29, 1986.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Joe Magliolo, Harris County Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, DUNN and LEVY, JJ.

## OPINION

LEVY, Justice.

This is an appeal from a conviction of murder for which the jury assessed punishment at 63 years confinement.

Appellant became pregnant at the age of 19 in the summer of 1984. She married the father of the child in December and left him in February 1985, due to marital difficulties, and returned to live with her parents. On April 2, she gave birth to Michael Dean Pitts, whom she took home from the hospital April 5. Sometime on the evening of April 9 she began contemplating killing Michael and committing suicide. On the morning of April 10, she waited until her parents had left the house. She then took the child into the kitchen, sat on the floor, and placed her hand over Michael's mouth and nose until he was dead.

There is some dispute whether she then attempted to shoot herself with her father's gun, which was kept in a nightstand in her parents' bedroom. Apparently she was unable to operate the gun. Thereafter, she called the constable's office and reported that she had killed her baby.

Appellant brings this appeal asserting two grounds of error. By her first ground, appellant alleges that the trial court erred in refusing to allow her to impeach her own witness, Norma Cuellar, called at the punishment phase.

While appellant was awaiting the punishment proceedings, she was seated in custody with others and engaged in conversation with Bridget Louise Hubbard. The State later called Hubbard to the stand during the punishment proceedings, and she testified that appellant described how she had smothered her baby with her hand, and that appellant was laughing when she told her how. In an attempt to neutralize this inflammatory testimony, appellant's counsel called Norma Cuellar to the stand. Cuellar had also been seated with appellant and Hubbard awaiting proceedings, and testified that she had overheard appellant's conversation with Hubbard. Cuellar stated in essence that appellant said she had smothered her baby with her hand and that appellant was smiling when she said it. Appellant's counsel immediately requested that the jury be withdrawn, which was granted, and then attempted to impeach Cuellar by showing that she had told him earlier that appellant began talking about something else and *only then* started smiling. State's objections that defense counsel was attempting to impeach and lead his own witness were sustained. Defense counsel contended surprise and injury and was permitted to make a bill of exception on this point, but only later, when the jury withdrew to deliberate.

It is well established that before an attorney or a party may impeach his own witness, he must establish the proper predicate by showing not only that the testimony has surprised but also that it is injurious to his cause. *Goodman v. State,* 665 S.W.2d 788, 791 (Tex.Crim.App.1984); *Houston v. State,* 626 S.W.2d 43 (Tex.Crim. App.1981); *Dove v. State,* 623 S.W.2d 346 (Tex.Crim.App.1981); *Hunicutt v. State,* 523 S.W.2d 244 (Tex.Crim.App.1975). Because these issues are questions for the court, a hearing is required to be conducted outside the presence of the jury. *See Goodman,* 665 S.W.2d at 791; *Gauntt v. State,* 169 Tex.Crim.R. 520, 335 S.W.2d 616 (1960). A mere statement of surprise to the court is insufficient. *See Ortega v. State,* 659 S.W.2d 35, 38 (Tex.Crim.App. 1983). In order to demonstrate surprise, the party must show prior inconsistent conversations with or statements by the witness. *Goodman,* 665 S.W.2d at 792. That the witness merely fails to testify as expected, or to remember facts favorable to the party, is not sufficient. *Houston,* 626 S.W.2d at 45.

It is within the sound discretion of the trial court, subject to appellate review for abuse, to determine whether the proper predicate of surprise and injury has been laid. *Hunicutt,* 523 S.W.2d at 247. Reversible error is presented only when there is a reasonable possibility that the injurious evidence may have contributed to

the conviction or to the severity of punishment. *See Dove,* 623 S.W.2d at 348.

In the case at bar, outside the presence of the jury, the trial court granted some leeway in the order of presentation. Appellant's attorney had a conversation with Cuellar in the hall, within the presence of the prosecutor, before Cuellar testified. The attorney later indicated that he was surprised when she testified that appellant was smiling *as she spoke about smothering her child,* rather than while on another subject. The defense counsel stated: "You are expecting one form of testimony and you get another." Shortly thereafter, the prosecutor interjected that he had spoken to her and she was testifying as to the same thing she had told him. The trial judge stated that he did not think "the testimony she has given at this time is sufficient to show that there is going to be any injury to [the appellant's] cause. It's just that she is now testifying to something different than what [the defense counsel remembers]." The question at issue, therefore, is whether it was reversible error to refuse to allow impeachment of the witness before the jury.

We have no doubt that the testimony of Cuellar, corroborating earlier testimony of Hubbard, did serious damage to appellant's status before the jury: the effect of such testimony, that appellant was smiling as she described how she suffocated her baby, could not be less than incendiary. It should have, but did not, alert the trial judge to allow the defense a full opportunity to probe, impeach, and neutralize the intense prejudice thereby created. Effective impeachment, though nominally limited to Cuellar, could theoretically have cast doubt on Hubbard's testimony as well. It is difficult to understand how the testimony of Hubbard was elicited for any purpose other than to infuriate the jury, and the defense should have been granted a fair opportunity to question Cuellar in an effort to contradict Hubbard's testimony indirectly as well as impeach Cuellar's own, directly. We conclude that the court's denial of appellant's right of effective impeachment is functionally equivalent, at least in the instant case, to deprivation of effective cross-examination. Even this error, however, is subject to harmless-error analysis. *See Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The correct inquiry in these circumstances is "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless *beyond a reasonable doubt.*" *Id.,* at 1438. A reviewing court should be able to decide whether the not-impeached evidence might have affected the reliability of the factfinding process at trial. Because the record reveals that the 19-year-old defendant had no prior criminal history but was nevertheless assessed a 63-year sentence, in the fact of a prosecutorial request for a 60-year sentence, we are unable to say that the error in denying the opportunity to impeach was "harmless beyond a reasonable doubt." The testimony sought to be impeached was gruesome, even as described in the State's brief, and we cannot believe that the jury remained olympian in its detachment after hearing it.

We therefore sustain appellant's first ground of error.

By her second ground of error, appellant complains of error by the trial court in refusing to allow testimony by a psychologist, Dr. James Ray Hays, at the guilt-innocence stage as to the condition of appellant's mind at the time of the offense.

The substance of Dr. Hays's testimony, brought forward in the punishment phase and by a pretrial psychological evaluation of record, was to the effect that appellant's personality pattern is consistent with a "borderline personality disorder." In his opinion, appellant was under intense stress brought about by her pregnancy, her relationships with her husband and family, the delivery of the child, and feelings of depression and lack of control over her life. As a result, in his opinion, she suffered a "brief reactive *psychosis*" and chose the solution of killing the child and herself,

perceiving the child to be, not an independent human being, but an extension of herself and subject to her will to commit suicide.

Appellant raises the issue whether, under Tex.Penal Code Ann. sec. 19.06 (Vernon 1974), where the charge is murder or involuntary manslaughter, the accused may offer expert testimony about the state of her mind at the time of the offense—short of establishing insanity—*during the guilt stage of the trial.* Since the submission of this cause, the Court of Criminal Appeals has issued its opinion in *Werner v. State,* 711 S.W.2d 639 (Tex.Crim.App. 1986) interpreting sec. 19.06, which governs admissibility of such expert testimony under the circumstances described. The Court's majority held that sec. 19.06 does not extend the rules of evidence or offer a broader basis for admission of evidence, despite its wording, and upheld this Court's earlier majority opinion finding that the excluded psychiatric evidence, not offered to establish insanity, was irrelevant to the issue of guilt.

Although it is unnecessary for us to discuss this ground further in view of our reversal on appellant's first ground of error, we observe briefly that this recent opinion appears to foreclose the appellant's argument under her second ground, and limit admissibility of such evidence to the punishment stage only.

The judgment of the trial court is reversed, and the cause is remanded.