Leanne Marie PITTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 773–86.

Court of Criminal Appeals of Texas,
En Banc.

June 8, 1988.

Rehearing Denied Oct. 19, 1988.

Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson and Joe Magliolo, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was indicted for murder as proscribed by §§ 19.02(a)(1) and 19.02(a)(2), *Tex.Penal Code.* Following a jury trial, the appellant was convicted and assessed punishment at sixty-three years in the Texas Department of Corrections.

The First Court of Appeals reversed the appellant's conviction, holding that the trial court erred in sustaining the State's objection to the appellant's attempt to impeach a witness called by appellant at the punishment phase of the trial. *Pitts v. State,* 712 S.W.2d 563 (Tex.App.—Houston [1st] 1986, *pet granted*). We granted the State's petition for discretionary review to determine whether the court of appeals applied the appropriate standard established by this Court in order to justify the impeachment of one's own witness as the law existed at the time of appellant's trial.[1]

After becoming pregnant at the age of nineteen in the summer of 1984, appellant

---

1. At the time of appellant's trial the law governing the impeachment of one's own witness emanated from Article 38.28, V.A.C.C.P., and our interpretations thereof:

    A party may, when testimony of his own witness is injurious to his cause, attack the testimony in any other manner except by offering evidence of the witness' bad character.

This Court adopted the Rules of Criminal Evidence effective September 1, 1986. Rule 607 states:

    The credibility of a witness may be attacked by any party, including the party calling him.

married the father of her child the following December. The marriage broke up in February, 1985, and appellant began to reside with her parents. She gave birth to the deceased, Michael Dean Pitts, on April 2, 1985, and shortly thereafter took the child home to her parents' house. Apparently on the evening of April 9, 1985, appellant began contemplating the murder of her child and suicide. The record reveals that on April 10, 1985, appellant waited until her parents left the family residence, whereupon she took the child into the kitchen, sat on the floor, and placed her hand over Michael's mouth and nose suffocated him until he died.[2]

After the jury convicted the appellant, and while awaiting the punishment stage of the trial, she was seated with other prisoners in the lockup when she had a conversation with Bridget Louise Hubbard. This conversation was overheard by Norma Cuellar. At the punishment stage the State called Hubbard as a witness and she testified that appellant described that Michael Dean Pitts died by appellant smothering him with her hand. Further, according to Hubbard, when the appellant was recounting the offense the appellant was laughing. In an attempt to rebut this inflammatory testimony, appellant's counsel called Norma Cuellar to testify. Cuellar testified that she had also been seated with appellant and Hubbard and had overheard the conversation which took place between them. Cuellar also stated that appellant had told Hubbard that she smothered the baby with her hand and was smiling when she said it. Obviously surprised by Cuellar's testimony, at the request of appellant's counsel the jury was taken from the courtroom. Then, outside the presence of the jury, appellant's attorney attempted to impeach Cuellar by demonstrating that she had previously told him that appellant began talking about a subject unrelated to the death of the child, and it was only then that appellant started smiling.

The State objected that defense counsel was attempting to impeach his own witness without having established the proper pred-

icate. The State's objection was sustained and the appellant was not permitted to impeach Cuellar in the presence of the jury. As the court of appeals noted in its opinion, defense counsel claimed surprise and injury and was permitted to make a bill of exception on this matter.

In the court of appeals, the appellant asserted that the trial court committed reversible error by refusing the appellant the opportunity to impeach Norma Cuellar, before the jury, in that the essential prerequisites of surprise and injury were established. After stating the rudimentary rule governing the impeachment of one's own witness, the court of appeals concluded that Cuellar's testimony was both a surprise to appellant's counsel and also that it was injurious to the appellant's cause. Therefore, the trial court committed reversible error when it refused to allow the impeachment of Cuellar before the jury. The State in contrast contends that the court of appeals misapplied the law relevant to the second prong of the predicate necessary to allow the impeachment of one's own witness when it determined that Cuellar's testimony was indeed injurious to appellant's case.

On this issue the court of appeals, mixing the principles of "injurious to the appellant's cause" with a harmless error analysis, wrote:

> We have no doubt that the testimony of Cuellar, corroborating earlier testimony of Hubbard, did serious damage to appellant's status before the jury: the effect of such testimony, that appellant was smiling as she described how she suffocated her baby, could not be less than incendiary. It should have but did not, alert the trial judge to allow the defense a full opportunity to probe, impeach, and neutralize the intense prejudice thereby created. Effective impeachment, though nominally limited to Cuellar, could theoretically have cast doubt on Hubbard's testimony as well. It is difficult to understand how the testimony of Hubbard was elicited for any other purpose other than to infuriate the jury,

---

**2.** We will adopt much of the facts from the court of appeals' opinion.

and the defense should have been granted a fair opportunity to question Cuellar in an effort to contradict Hubbard's testimony indirectly as well as impeach Cuellar's own, directly. We conclude that the court's denial of appellant's right of effective impeachment is functionally equivalent, at least in the instant case, to deprivation of effective cross-examination. Even this error, however, is subject to harmless error analysis. See *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

*Pitts v. State, supra,* at 565.

We readily concede that the rule regarding the impeachment of one's witness has caused substantial confusion among the practitioners and jurists of this State. We previously recognized this in *Brown v. State,* 523 S.W.2d 238 (Tex.Cr.App.1975), when we stated:

> Much confusion seems to exist among the bench and bar about when a party may impeach its own witness. It is well established, however, that a party may not impeach its own witness *unless the witness testifies to facts injurious to that party's case and that party demonstrates that he was surprised by such testimony.*

*Id.,* at 241.

While we agree with the court of appeals that the appellant showed surprise and the effect of Cuellar's testimony was detrimental to her in the sense that it may have left unfavorable inferences with the jury and Hubbard's version of the conversation between herself and appellant went unrebutted, we do not agree that this prejudice is synonymous with "injurious" as contemplated as a foundational requirement to impeaching one's own witness. "Injurious," in the context of the second prong of such predicate, has evolved into a legal term of art which is indicative of a particular type of damage which is essential that the party seeking to impeach his own witness demonstrate. This burden is the same whether the State or appellant is seeking to impeach the witness. *Sweeney v. State,* 704 S.W.2d 33 (Tex.Cr.App.1985). The nature of the particular harm necessary to

satisfy the predicate was identified in *Houston v. State,* 626 S.W.2d 43, 45 (Tex. Cr.App.1982), where this Court stated:

> It is not sufficient that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness. *Brown v. State,* 523 S.W.2d 238 (Tex.Cr.App.1975); *Wood v. State,* 511 S.W.2d 37 (Tex.Cr.App.1974). *If the State has offered no evidence to prove a relevant fact, it cannot be said that its witness who denies existence of that relevant fact has by that denial stated facts injurious to the State's case. Wall v. State,* 417 S.W.2d 59 (Tex. Cr.App.1967). [emphasis added].

In *Lewis v. State,* 593 S.W.2d 704 (Tex. Cr.App.1980), the State's witness testified contrary to a previously written statement taken by the investigating officers. Over the defendant's objection the State was permitted to impeach its own witness by introducing the statement into evidence. Citing *Smith v. State,* 479 S.W.2d 311 (Tex. Cr.App.1972), this Court concluded that the witness did not testify to facts injurious to the State's case, as the State was merely confronted with a failure of proof when the recalcitrant witness fails to testify as expected. While a criminal defendant obviously has no burden of proof in a criminal case, and thus the term "failure of proof" would be an inappropriate designation, he does have the burden to demonstrate the proper predicate before he may impeach his own witness.

More directly applicable is *Sweeney v. State, supra.* In *Sweeney* the defendant called a witness that he expected would directly contradict the testimony of the state's only eye witness. Similar to appellant's experience with Cuellar, the defense witness in *Sweeney* refused to contradict the state's witness. In fact, according to the Court, the effect of her testimony "was to substantiate the state's version of the events." *Id.* at 35. Nevertheless the Court held that "[i]f the calling party has offered no evidence to prove a relevant fact, it cannot be said that the witness, through the denial of the existence of such

fact, has by such denial stated facts injurious to the calling party's cause." *Id.*

■ Thus, under the *stare decisis* of this Court the party seeking to impeach his witness in order to demonstrate injury must show that the witness has testified contrary to a relevant fact proven by the proponent of the witness regardless of whether he had a burden to establish that fact.

■ In the instant case, the defense was confronted with the failure of the witness to testify as expected. The witness, Norma Cuellar, by testifying that appellant was smiling when she told Hubbard how she smothered her baby did not state facts injurious to her case in the sense necessary to establish the prerequisite to impeach one's own witness. Accordingly, the trial court did not err in not allowing appellant to impeach her witness.

The judgment of the court of appeals is therefore reversed and the judgment of the trial court is affirmed.

CLINTON and MILLER, JJ., concur.

TEAGUE, J., dissents.