NOS. 12-02-00042-CR


 12-02-00043-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


RANDY WILSON,
§
 APPEAL FROM THE 282ND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 DALLAS COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Randy Wilson appeals from his convictions for aggravated sexual assault of a child
and sexual assault of a child. The jury assessed punishment at seventy-five years and twenty years of
confinement, respectively. Appellant raises nine issues on appeal. We affirm the trial court's judgment.


Background

 Appellant married Sharion Wilson in 1981. On May 12, 1982, their daughter, B.W., (1) was born. 
From the time that B.W. was eleven or twelve years old, Appellant was a stay-at-home dad while
Sharion worked outside the home. Appellant was the family disciplinarian when B.W. started getting
in trouble at school. Appellant was very strict. He would beat her with a shoe, an extension cord, or
anything he could get his hands on. He frequently accused B.W. of "being with boys." Sharion testified
that she frequently checked B.W. to see if her hymen was intact. B.W. testified that Appellant
frequently "checked" by attempting to put his penis inside her vagina. When he was unable to insert
it completely, he determined that she had not been with a boy. He "checked" her like that twenty or
thirty times, beginning when she was eleven or twelve. 

 B.W. first had sexual intercourse with a friend, Jason, when she was thirteen years old. They
were caught and her dad was told immediately. B.W. testified that Appellant took her home, slapped
her, and had sexual intercourse with her for the first time that same day. Thereafter, Appellant had
intercourse with his daughter on a regular basis. A month before her sixteenth birthday, B.W. had her
first abortion. Nine months later, she had her second abortion. Appellant took her to the abortion clinic
both times. B.W. testified that Appellant was the father of her unborn babies. On January 28, 1999,
about three weeks after the second abortion, B.W. told Carol Hickman, her high school counselor, about
the abuse. Appellant was indicted for aggravated sexual assault of a child under the age of fourteen,
occurring on or about May 11, 1996, and sexual assault of a child on or about January 2, 1999.


Factual Sufficiency

 In his first issue, Appellant contends the evidence is factually insufficient to prove B.W. was
younger than age fourteen when he had sexual intercourse with her. He bases his argument on a
discrepancy between B.W.'s trial testimony and a written statement she made to police on January 28,
1999.

 At trial, B.W. testified that she had sexual intercourse with Jason when she was thirteen years
old and that Appellant had intercourse with her that same day. In her written statement to the police
B.W. said, "The first person I ever had sex with was a boy named Jason. At least one year time span
passed between the time I had sex with Jason and the time my dad started having sex with me."

Applicable Law

 When reviewing the factual sufficiency of the evidence, we consider whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). We set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). In conducting this analysis, our duty is to examine the trier of fact's weighing of the evidence. 
Johnson, 23 S.W.3d at 7. We consider all of the evidence in the record related to an appellant's
sufficiency challenge, comparing the weight of the evidence that tends to prove guilt with the evidence
that tends to disprove it. See id. However, because the jury is the sole judge of the facts, we must give
deference to jury findings. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight
to give contradictory testimonial evidence is within the sole province of the jury because it turns on an
evaluation of credibility and demeanor. Id. at 408-09. 

 The indictment alleged, and thus the State was required to prove beyond a reasonable doubt, that
Appellant knowingly and intentionally caused the contact and penetration of the female sexual organ
of B.W., a child, who was not Appellant's spouse, by Appellant's sexual organ, and at the time of the
offense, the child was younger than fourteen years of age. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)
(Vernon 2003).

Discussion

 At trial, B.W. testified that Appellant had sexual intercourse with her when she was thirteen
years old. In her written statement to police, she said she had sex with Jason when she was thirteen but
a year passed after that before she had sex with Appellant. The weight to give this contradictory
evidence is within the jury's province. Cain, 958 S.W.2d at 408-09. The jury could have disregarded
that portion of the statement to police. Moreover, Appellant ignores B.W.'s testimony regarding how
Appellant "checked" her to determine if she had become sexually active. Beginning when B.W. was
eleven or twelve, ostensibly for the noble purpose of determining if she was still a virgin, Appellant
tried to put his penis in her vagina. B.W. testified that he was unable to get it completely inside her,
but his penis went in far enough to hurt her. Appellant did this twenty or thirty times before B.W. ever
had sex with Jason at age thirteen. In her statement to the police, B.W. said "[h]e couldn't get it in
except for just a little ways." On the other hand, Appellant denied ever having intercourse with his
daughter, at any age. However, the jury was entitled to disbelieve Appellant's testimony. 

 The statute is satisfied by showing any penetration, no matter how slight. Sherbert v. State, 531
S.W.2d 636, 637 (Tex. Crim. App. 1976). Proof of a typical act of intercourse is not necessary for an
aggravated sexual assault conviction. Martinez v. State, 662 S.W.2d 393, 395 (Tex. App.- Corpus
Christi 1983, pet. ref'd).

 After examining all the evidence in a neutral review and giving deference to the jury's verdict,
we conclude that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Clewis, 922 S.W.2d at 129. Moreover, from our neutral review of all the
evidence, we find it fails to show that the proof of Appellant's guilt is so obviously weak as to
undermine confidence in the jury's determination, or that the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. Johnson, 23 S.W.3d at 11. The evidence is factually
sufficient to support the jury's verdict. We overrule Appellant's first issue.


Admissibility of Evidence

Written Statements

 In his second and third issues, Appellant asserts that the trial court erred in admitting State's
Exhibits 3 and 4, two written statements B.W. gave to police. These statements were made shortly after
B.W. spoke to her school counselor. Appellant argues that they are inadmissible hearsay offered only
to bolster her trial testimony.

 B.W. testified at trial to describe how Appellant physically and sexually abused her. On cross-examination, counsel for the defense tried to show the jury that B.W. had been an incorrigible child who
needed discipline and who resented her father for disciplining her. The implication is that she brought
these allegations against him to retaliate, not because the abuse really happened. On redirect, the State
questioned B.W. about the type and extent of Appellant's discipline and about an incident involving
a lie she told her parents and the police. On re-cross, counsel for the defense focused on that incident,
which involved a sexually-oriented lie that B.W. told, and introduced into evidence the police report
that memorialized it. On further redirect, the State introduced its Exhibits 3 and 4, statements B.W.
made to the police shortly after she spoke to her counselor. Generally, in both statements, B.W.
described how Appellant sexually abused her.

 We review a court's ruling on the admissibility of evidence under an abuse of discretion
standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We will not reverse such
a ruling so long as it falls within the zone of reasonable disagreement. Id. at 102. Rule of evidence
801(e)(1)(B) provides that a statement is not hearsay if the declarant testifies at trial and is subject to
cross-examination concerning the statement, and the statement is consistent with the declarant's
testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication
or improper influence or motive. Tex. R. Evid. 801(e)(1)(B).

 Under the facts of this case, the written statements were admissible pursuant to Rule
801(e)(1)(B). See Ray v. State, 764 S.W.2d 406, 411 (Tex. App.-Houston [14th Dist.] 1988, pet. ref'd). 
B.W. testified and was subject to cross-examination concerning the statements. Although one statement
contained a sentence explaining the timing of the assaults that was inconsistent with B.W.'s trial
testimony, in general the statements were consistent in that they related the facts of the sexual assaults
by Appellant. The State offered the written statements on redirect only after the defense presented its
strategy on cross-examination. As stated above, the defense's strategy was to convince the jury that the
allegations of sexual abuse were untrue and that B.W. was trying to retaliate against her father's brutal
punitive practices. The trial court did not abuse its discretion in admitting State's Exhibits 3 and 4. Id. 
We overrule Appellant's second and third issues.

Outcry Testimony

 In his sixth issue, Appellant asserts the trial court erred in allowing Carol Hickman to testify as
an outcry witness. He argues that the evidence does not show that B.W. was twelve years of age or
younger when the aggravated sexual assault occurred. Further, he complains that B.W.'s statement to
Ms. Hickman is not reliable because it was not a spontaneous narrative, but rather, the result of
questioning by Ms. Hickman.

 Article 38.072 of the Texas Code of Criminal Procedure provides for the admission of hearsay
testimony in the prosecution of an offense committed against a child twelve years of age or younger. 
Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Pamph. 2003). That article applies only to
statements that describe the alleged offense that were made by the child against whom the offense was
allegedly committed and were made to the first person, eighteen years of age or older, other than the
defendant, to whom the child made a statement about the offense. Id. The statement must be more than
words which give a general allusion that something in the area of child abuse was occurring. Garcia
v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The evidence must clearly show that the victim
described the alleged offense in some discernible manner to the witness. Id.

 We note that Appellant did not object at trial on the ground that B.W. was not twelve years of
age or younger at the time of the aggravated sexual assault. However, as explained above, B.W.
testified at trial that such aggravated sexual assaults began when she was eleven or twelve. This
evidence suffices to meet the statute's age requirement. Tex. Code Crim. Proc. Ann. art. 38.072.

 Article 38.072 applies to statements made by the child that "describe the alleged offense." Tex.
Code Crim. Proc. Ann. art. 38.072, § 2(a). The statute does not specify the form of the statements. 
The record shows that B.W. decided to tell her counselor about the abuse and went to the counselor's
office to do so. Ms. Hickman testified that B.W. was adamant about seeing a counselor that day. She
testified that B.W. told her she was afraid to go home because she had been physically abused and was
afraid she would be beaten if she went home. After notifying Child Protective Services, she continued
to talk to B.W. She explained that she could not remember specifically how, "but by and by," B.W. told
her she had two abortions. She testified that she had said to B.W., "Tell me, you know, what is this all
about?" Then they had a conversation in which B.W. told Ms. Hickman that she had been pregnant by
her father and he had taken her to have the abortions both times. Ms. Hickman also asked her whether
her mother knew of the abortions. 

 Nowhere in her testimony is there any indication that Ms. Hickman manipulated B.W.'s
responses or suggested to B.W. what she should say. The outcry statement conforms to the statutory
requirements. See Tex. Code Crim. Proc. Ann. art. 38.072. B.W. adequately described the offenses
to Ms. Hickman. See Garcia, 792 S.W.2d at 91. The "form" of the outcry does not vitiate its reliability. 
We overrule Appellant's sixth issue.


Impeachment of State's Witness

 In his seventh issue, Appellant asserts the trial court erred in allowing the State to impeach its
own witness, Sharion Wilson, with specific instances of bad conduct. In his eighth issue, Appellant
contends the trial court erred in allowing the State to impeach Sharion Wilson on a collateral matter. 
Both issues refer to Sharion Wilson's testimony that she forged four of her own paychecks to make it
appear that Appellant worked for Allstate Insurance. Appellant asserts that the State questioned Sharion
Wilson about his work history for the sole purpose of impeaching her with evidence of the forgery. He
further argues that the impeachment was designed to make Appellant and his wife look like bad people
generally.

Admissibility

 On direct examination by the State, Sharion testified that she and Appellant worked together at
Allstate Insurance Company in Plano, Texas for six or seven months when B.W. was in junior high. 
She said they rode the bus together and worked all day. They would take turns leaving early so
someone could be home when B.W. got out of school. Also, she explained, Appellant worked at home
sometimes. Their supervisor in Plano was Ed Livingston. 

 Outside the presence of the jury, the prosecutor explained that the State had not anticipated that
Sharion would claim that Appellant had worked at Allstate. Sharion had refused to speak to prosecutors
or the State's investigator prior to trial. Prosecutors had no knowledge of what Sharion would say on
the stand. They assumed she would say he had not been working at all and therefore had access to B.W.
and opportunity to abuse her. In order to show Sharion lied about Appellant's employment at Allstate,
the State wanted to present evidence that Sharion had fraudulently placed Appellant's name on four of
her Allstate paychecks. The jury was brought back to the courtroom, and Sharion admitted she altered
the paychecks by naming Appellant as the payee to use as proof of his employment when they attempted
to lease an apartment in his name. She explained that he was not making enough money on his own
to qualify for the apartment.

 A party may not impeach its own witness unless the witness testifies to facts injurious to that
party's case and the party demonstrates that he was surprised by such testimony. Houston v. State, 626
S.W.2d 43, 45 (Tex. Crim. App. 1981). In order to demonstrate surprise, the party must show, outside
the presence of the jury, prior conversations with or statements by the witness. Ellis v. State, 683
S.W.2d 379, 382 n.2 (Tex. Crim. App. 1984). It is not sufficient for the party to merely claim that he
is surprised. Id. Further, it is not sufficient that the witness merely fails to testify as expected. He must
state facts injurious to the party calling him. Id. Additionally, a party may not impeach a witness on
a collateral matter. Bates v. State, 587 S.W.2d 121, 141-43 (Tex. Crim. App. 1979) (op. on reh'g). 
Generally, a matter may be considered collateral unless it relates to proof of the offense or to some
matter affecting the credibility of the witness. See Ramirez v. State, 802 S.W.2d 674, 676 (Tex. Crim.
App. 1990).

 Here, Sharion had not previously stated that Appellant did not work or that he never worked at
Allstate. The State candidly explained it did not know what Sharion would say on the stand. The State
cannot claim surprise merely because Sharion did not testify as expected. See Ellis, 683 S.W.2d at 382
n.2. Moreover, Sharion spoke in generalities and referred only to a short time span. B.W. testified that
she was abused from age eleven or twelve to age sixteen. Sharion testified that she and Appellant
worked at Allstate for six or seven months when B.W. was in seventh grade. Sharion admitted to
forging four checks, which apparently covered four weeks since she was paid on a weekly basis. No
dates were given but Sharion explained it was at a time when Appellant was not making enough on his
own. Considering the abuse took place over a period of five or six years, the fact that Appellant worked
at Allstate, if he did, for such a short period of time would not negate the fact that he had access to B.W.
during the remainder of the relevant time period. Further, according to Sharion's testimony, Appellant
had opportunity to abuse B.W. on days when it was his turn to leave work early to take care of B.W. 
Therefore, the testimony did not actually harm the State and does not show Sharion lied about
Appellant's having worked at Allstate. (2) See id.

 Further, although the State was attempting to show Sharion lied about Appellant's having access
to B.W., which is a material fact, in doing so it attempted to impeach Sharion with her prior bad acts,
which were collateral to the offenses alleged against Appellant. The matter of the forged checks did
not relate to proof of the assaults against B.W. Because Sharion explained the circumstances, the matter
of the forged checks did not actually affect her credibility. See Ramirez, 802 S.W.2d at 676. 
Accordingly, the trial court erred in admitting Sharion's testimony about the forged checks.

Harm Analysis

 Having found error, we must determine if that error was harmful. The admission of
inadmissible testimony constitutes non-constitutional error. See Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002). Non-constitutional errors that do not affect substantial rights are disregarded. 
Tex. R. App. P. 44.2(b). This court must examine the record as a whole to determine whether the error
influenced the jury verdict. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An error
is harmless if the reviewing court determines that no substantial rights of the defendant were affected
because the error did not influence or had only a slight influence on the verdict. Motilla, 78 S.W.3d
at 355. In assessing the effect of the error, the appellate court should consider everything in the record,
including any testimony or physical evidence, the nature of the evidence supporting the verdict, the
character of the alleged error and how it might be considered in connection with other evidence. Id. 
The appellate court may also consider the jury instructions, defense and prosecution theories, closing
arguments, and voir dire. Id. Whether the State emphasized the error can be a factor. Id. at 356. 
Finally, overwhelming evidence of guilt is also a factor to be considered. Id. at 357.

 B.W. testified that she had been physically and sexually abused by Appellant repeatedly for a
number of years. This was corroborated by Ms. Hickman's testimony and B.W.'s written statement to
police. The inadmissible evidence, Sharion's admission of forgery, neither supports the evidence of
guilt nor detracts from it. As explained above, the State was attempting to show that Appellant did not
work and therefore had access to B.W. Evidence of the forged checks did not prove that Appellant did
not work. This evidence proved that Appellant and his wife were willing to be deceitful and commit
fraud in order to get an apartment. Although this case presented a credibility issue, the fact that
Appellant would lie to obtain a place to live, does not make him more likely to commit sexual assault. 
The evidence of the forgery bore no relationship to the issue of Appellant's guilt and could not prevent
the jury from rationally considering all the evidence before it. See Motilla, 78 S.W.3d at 359. Further,
the forgery was not mentioned during voir dire or closing arguments. We conclude that admission of
Sharion's testimony about the forged checks did not influence the jury or had only a slight effect. See
id. at 355. The error in admitting this evidence was harmless. We overrule Appellant's seventh and
eighth issues.


Lesser-Included Offense Instruction

 In his fourth and fifth issues, Appellant asserts that the trial court erred in denying his requests
that the jury be instructed on a lesser-included offense in each case. Based on his own testimony that
he was a strict disciplinarian but had no sexual contact with his daughter, Appellant argues that the jury
could have concluded that he was not guilty of aggravated sexual assault and sexual assault, but that
he was guilty of injury to a child and misdemeanor assault.

 First, we must determine whether injury to a child is a lesser-included offense of aggravated
sexual assault and whether misdemeanor assault is a lesser-included offense of sexual assault in this
instance. If they are lesser-included offenses, then we look to the evidence in the record to determine
if the jury could find that if Appellant is guilty, he is guilty only of the lesser-included offenses. See
Lofton v. State, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001). An offense is a lesser-included offense
if: 1) it is established by proof of the same or less than all the facts required to establish the commission
of the offense charged, 2) it differs from the offense charged only in the respect that a less serious injury
or risk of injury to the same person, property, or public interest suffices to establish its commission, 3)
it differs from the offense charged only in the respect that a less culpable mental state suffices to
establish its commission, or 4) it consists of an attempt to commit the offense charged or an otherwise
included offense. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). 

 In the aggravated sexual assault case, Appellant was indicted for knowingly and intentionally
causing the contact and penetration of B.W.'s sexual organ by Appellant's sexual organ and, at the time
of the offense, B.W. was younger than fourteen years of age. See Tex. Pen. Code Ann. § 22.021(a)
(1)(B)(i) (Vernon 2003). Appellant argues that the jury should have been given the option of finding
him guilty of injury to a child instead of aggravated sexual assault. A person commits the offense of
injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence, by act or
intentionally, knowingly, or recklessly by omission, causes bodily injury to a person fourteen years of
age or younger. Tex. Pen. Code Ann. § 22.04(a)(3) & (c)(1) (Vernon 2003). In the sexual assault case,
Appellant was charged with knowingly and intentionally causing the penetration of B.W.'s sexual organ
by Appellant's sexual organ. See Tex. Pen. Code Ann. § 22.011(a)(2)(A) (Vernon 2003). Appellant
argues that the jury should have been given the option of finding him guilty of misdemeanor assault
instead of sexual assault. A person commits the offense of misdemeanor assault if he intentionally,
knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon
2003). 

 In determining whether one offense bears such relationship to the offense charged so as to
constitute a lesser-included offense, the controlling factor is whether the lesser offense could be proven
by the same facts as necessary to establish the offense charged. Mello v. State, 806 S.W.2d 875, 878
(Tex. App.-Eastland, 1991, pet. ref'd). In other words, the issue is whether proof of the charged offense
actually included proof of the lesser-included offense. Zamora v. State, 998 S.W.2d 290, 293 (Tex.
App.-Fort Worth 1999, pet. ref'd). Neither of the two charged offenses requires proof of bodily injury. 
Under these indictments, the State was required to prove penetration. Evidence of penetration does not
constitute evidence of bodily injury. Therefore, the lesser offense of bodily injury to a child could not
be proven by the same facts as necessary to establish aggravated sexual assault as charged, and the
offense of misdemeanor assault could not be proven by the same facts necessary to establish sexual
assault as charged in this case. Even though there is evidence in the record that Appellant inflicted
bodily injury on B.W., that evidence is immaterial to our determination. The "facts required" language
in article 37.09(1) means evidence legally required to prove elements as alleged in the indictment, not
necessarily all evidence the State presents to prove its case. Ramos v. State, 981 S.W.2d 700, 701 (Tex.
App.-Houston [1st Dist.] 1998, pet. ref'd).

 Because an additional fact must be proved for injury to a child and assault, but not for the
charged offenses, injury to a child and assault are not lesser-included offenses in this case. See id. 
Neither can injury to a child or assault be lesser-included offenses of the charged offenses under any
other provision of article 37.09 because 1) the offenses differ in ways other than simply in injury or risk
of injury, 2) the requirement of a less culpable mental state is not the only difference between the
offenses, and 3) the offenses are not merely an attempt to commit either of the charged offenses. See
Tex. Code Crim. Proc. Ann. art. 37.09. Therefore, the trial court did not err in refusing to instruct the
jury on the offenses of injury to a child or misdemeanor assault. We overrule Appellant's fourth and
fifth issues.


Motion for Continuance

 In his ninth issue, Appellant contends the trial court erred in not postponing the punishment
phase of the trial so he could secure the presence of Sharion Wilson to testify on his behalf. Claiming
surprise that Sharion had left the state, Appellant argues that he needed her testimony to rebut damaging
testimony by Sharion's mother that Appellant abused Sharion.

 The jury's verdict of guilty was returned on a Friday afternoon. The punishment phase began
the following Monday. Sharion's mother, Adrian Jenkins, testified that Sharion returned to Kentucky,
where she resides, on Saturday because she had to return a rental car and so she could get on with her
life. After the State rested, defense counsel explained that Sharion called him over the weekend asking
directions to Louisville, Kentucky. He gave her the directions and advised her that she was still under
the jurisdiction of the court. She explained to him that she had to return the car and go to work. 
Appellant wanted Sharion to testify to rebut allegations by Mrs. Jenkins that Appellant abused Sharion. 
Characterizing Sharion as an extremely material witness, he orally requested a continuance "for either
a day, two days, or a week" to secure Sharion's presence.

 A motion for continuance is a matter left to the sound discretion of the trial court. See
Hightower v. State, 629 S.W.2d 920, 926 (Tex. Crim. App. 1981). A continuance may be granted after
the trial has begun "when it is made to appear to the satisfaction of the court that by some unexpected
occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant
is so taken by surprise that a fair trial cannot be had." Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon
1989). All motions for continuance must be sworn by a person having personal knowledge of the facts
relied on for the continuance. Tex. Code Crim. Proc. Ann. art. 29.08 (Vernon 1989). Since the
motion is not self-proving, the record must contain an affidavit or otherwise reflect what the absent
witness would have testified to. Gentry v. State, 770 S.W.2d 780, 786 (Tex. Crim. App. 1988). Where
a defendant's motion for continuance is neither in writing nor sworn to, nothing is preserved for review. 
Minx v. State, 615 S.W.2d 748, 749 (Tex. Crim. App. 1981). 

 Here, Appellant made only an oral motion for continuance. The record does not contain a sworn
affidavit in support of the motion. Appellant did not include a complaint about the trial court's failure
to grant his motion for continuance in his motion for new trial. See Ashcraft v. State, 900 S.W.2d 817,
834 (Tex. App.-Corpus Christi 1995, pet. ref'd). Therefore, Appellant has not preserved this complaint
for review. Minx, 615 S.W.2d at 749. We overrule Appellant's ninth issue.

 We affirm the trial court's judgment.




 SAM GRIFFITH 

 Justice



Opinion delivered July 31, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

















(DO NOT PUBLISH)
1. We refer to the victim by her initials.
2. The State later presented the testimony of Ed Livingston, the Allstate agent Sharion named as Appellant's
supervisor. Mr. Livingston testified that Sharion and Appellant began unpaid training in his office but stayed only a
week to two weeks. They never completed the training and they never received any paychecks from him. He
specifically stated that Appellant never worked out of his home for Mr. Livingston and Appellant was never
employed by Allstate.